STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v. RUSSELL WOLF, DEFENDANT-RESPONDENT.

Argued December 20, 1965—Decided January 24, 1966.

*Mr. Alvin S. Michaelson,* Assistant Prosecutor of Hudson County, argued the cause for appellant (*Mr. James A. Tumulty, Jr.,* Prosecutor of Hudson County, attorney).

*Mr. Albert J. Shea* argued the cause for respondent.

The opinion of the court was delivered by

FRANCIS, J. Defendant Wolf was convicted of murder in the first degree with a jury recommendation of life imprisonment. On appeal this Court reversed the judgment for trial errors and remanded the case for retrial. *State v. Wolf,* 44 N. J. 176 (1965). Thereafter at a pretrial conference the County Court ruled that by reason of the verdict at the first trial the State was barred from seeking the death penalty again at the new trial. The precise issue never having been

passed upon by the Supreme Court, we granted the Prosecutor's application for leave to appeal.

■ Defendant points out that at the original trial the jury was instructed to bring in one of three possible verdicts: (1) guilty of murder in the first degree, which would result in the mandatory imposition of the death penalty, (2) guilty of murder in the first degree with a recommendation of life imprisonment "in which case this and no greater punishment [can] be imposed." *N. J. S.* 2A:113–4, or (3) not guilty. The jury found Wolf guilty of first degree murder. Because they recommended life imprisonment defendant asserts that, by implication, they acquitted him of that kind of first degree murder which warrants the death penalty. Therefore, he contends the double jeopardy clauses of both Federal and State Constitutions give him complete immunity against further exposure to any punishment greater than life imprisonment. The Fifth Amendment of the United States Constitution says that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb * * *." *Article* I, *paragraph* 11 of the New Jersey 1947 *Constitution* specifies that, "No person shall, after acquittal, be tried for the same offense." Although the language of the former seems to be broader in scope than the latter, actually in operation their boundaries are co-extensive. *State v. Williams,* 30 *N. J.* 105, 122 (1959).

■■ It has long been the law of this State that where a lesser offense is a necessary ingredient or component part of the principal or greater offense and emanates from the same transaction, then conviction or acquittal of the lesser bars further prosecution for the greater crime. *State v. Dixon,* 40 *N. J.* 180 (1963); *State v. Williams, supra; State v. Mark,* 23 *N. J.* 162 (1957); *State v. Labato,* 7 *N. J.* 137 (1951). Moreover, this Court has held that conviction of a lesser degree of a crime which is divided into degrees amounted to an acquittal of guilt of the higher degree, and that after reversal of the conviction for the lesser degree the accused cannot be retried for the higher degree. *State v. Williams, supra.*

In *Williams* defendant was indicted and tried for murder. At the close of the case a verdict of guilt of either first or second degree murder was possible. The trial court so advised the jury which found him guilty of murder in the second degree. We declared, following the view taken by the United States Supreme Court in *Green v. United States,* 355 *U. S.* 184, 78 *S. Ct.* 221, 2 *L. Ed.* 2d 199 (1957), that by irresistible implication such verdict signified an acquittal of first degree murder and brought into play the bar of the double jeopardy clause of the New Jersey Constitution so as to prevent the State from reprosecuting the defendant for first degree murder. We also held that the implied acquittal of the higher offense cloaked him with a constitutional immunity which was not waived by the successful appeal from the second degree murder conviction. Basically the reason for the conclusion was that the defendant had not appealed from the acquittal but only from the conviction for the lower offense. Thus having appealed from the only offense of which he had been found guilty, the reversal expunged only that conviction and the record stood as if he had never been in jeopardy for that offense. Consequently he was left subject to reprosecution only for that expunged offense, *i. e.,* second degree murder.

Here the defendant accepts the fact that he was convicted of first degree murder. But he maintains there are two types of offenses known as first degree murder. One is the type which in the judgment of the jury upon a consideration of all the evidence warrants the death penalty. The other is of a less atrocious or shocking nature and which in the judgment of the jury after a consideration of all the evidence warrants life imprisonment rather than death. Thus he contends that by the verdict in the first trial he was acquitted of the more heinous type of first degree murder, and to retry him for that offense would be to put him in jeopardy again for the "same" offense within the meaning of the constitutional proscription.

Some support for defendant's position is to be found in *People v. Henderson,* 60 *Cal.* 2d 482, 35 *Cal. Rptr.* 77, 386 *P.*

2d 677 (*Sup. Ct.* 1963). There the defendant was charged with first degree murder. A California statutory provision is made for a bifurcated trial in such cases; the first phase or trial decides the issue of guilt or innocence, in effect, a separate proceeding; the second determines the punishment, if guilt has been found or if a plea of guilty has been entered. In *Henderson* the defendant waived jury trial and pleaded guilty to murder. Then after the punishment hearing at which the defendant was subject to the death penalty, the court found the murder to be first degree, but imposed a sentence of life imprisonment. On appeal the judgment and sentence were reversed for error in the proceeding and a new trial ordered.

The retrial, again on the issue of punishment, was conducted before a jury, and over defendant's objection the State was allowed to seek the death penalty. A verdict of death was returned by the jury and defendant appealed. The Supreme Court reversed the judgment holding that the substantially identical double jeopardy clauses of the California and United States Constitutions, as construed in *Green v. United States, supra,* barred the death penalty as an issue in the reprosecution of Henderson. It considered that a distinction could not be made constitutionally between (1) a case where a defendant after obtaining a reversal of his conviction for an offense of a lower degree, *i. e.* second degree murder, is held immune from further prosecution for a crime of a higher degree, *i. e.* first degree murder, and (2) a case where a jury in a separate proceeding to fix punishment for a defendant whose guilt of first degree murder has been established by trial or on hearing after plea, decides upon the lesser of two alternative punishments, and that determination is reversed on appeal. It found both instances to be within the contours of the double jeopardy clause. To hold otherwise the Court declared would be to require a defendant to make a choice between accepting an erroneous conviction with its life imprisonment sentence, and seeking a reversal on appeal, which, if successful would again expose him to the death penalty on retrial. No one, it

held, should be faced with such a desperate choice; the law should not and does not "place the defendant in such an incredible dilemma."

In *Henderson* the state relied upon the long settled principle that when a defendant appeals and is successful in reversing a criminal conviction, he waives the double jeopardy defense because the reversal expunges the erroneous judgment and the record stands as if he had never been tried for that offense. It pointed out that the reversal which Henderson obtained was of a conviction for first degree murder, the highest offense with which he was charged. And the state further said it was not seeking (as in *Green v. United States*) to retry the defendant for a higher crime or degree of crime than the one for which he had been convicted and had obtained the reversal, that is, a crime of which he was impliedly acquitted; the intention was simply to retry him for the very offense of which he had been convicted, the reversal of which had wiped out all claim that he was formerly in jeopardy. Further, the state contended that punishment is not an ingredient of the offense of murder in the first degree; it is a consequence of the finding of guilt of the offense; therefore, on a reprosecution the punishment imposed originally having fallen with the reversal is open to reassessment in the event that guilt of the same offense is found again.

In support of its position the state in *Henderson* relied principally on *Stroud v. United States,* 251 *U. S.* 15, 18, 40 *S. Ct.* 50, 64 *L. Ed.* 103, decided in 1919. There Stroud was convicted by a jury of murder in the first degree "without capital punishment." On retrial after reversal of the first judgment for trial errors, the second jury found guilt of the same degree of murder but made no recommendation to dispense with capital punishment. Upon imposition of the death penalty, an appeal was taken alleging Stroud was put in double jeopardy in violation of the Fifth Amendment (the killing having occurred in a federal prison) when the trial court allowed the issue of the death penalty to be submitted to the jury. The United States Supreme Court disposed of the con-

tention in two paragraphs of its opinion saying the fact that under the statute the jury may mitigate the punishment to imprisonment for life did not render the conviction less than one for first degree murder. It pointed out that the defendant himself invoked the action which resulted in reversal of the first judgment, leaving no course open but the ordering of a new trial. "In such cases [the defendant] is not placed in second jeopardy within the meaning of the Constitution." 251 *U. S.,* at *p.* 18, 40 *S. Ct.,* at *p.* 51. The California Supreme Court observing that *Stroud* had been decided 38 years before *Green v. United States, supra,* felt the force of *Stroud* had been vitiated because *Green* had established on the federal scene the principle that a reversed conviction of a lesser degree of a crime precludes conviction of a higher degree on retrial. 35 *Cal. Rptr.* 77, 386 *P. 2d,* at *p.* 686. The court noted that prior to the decision in *Green,* California had followed the principle espoused in *Stroud,* but after *Green,* in *Gomez v. Superior Court,* 50 *Cal. 2d,* 640, 328 *P. 2d* 976 (1958), it had abandoned the earlier rule and, without deciding whether *Green* was binding on the state by virtue of the Fourteenth Amendment, had declared that under the California Constitution a successful appeal from a conviction of a lower offense does not waive a defense of double jeopardy, and the defendant cannot be reprosecuted for an offense of a higher degree. *People v. Henderson, supra,* 35 *Cal. Rptr.,* at *p.* 85, 386 *P. 2d,* at *pp.* 685–686. Consequently, the court felt the humane rule announced in *Green* warranted the view that in a first degree murder case a determination on a first trial of life imprisonment as the defendant's punishment should raise the bar of double jeopardy and prevent imposition of the death penalty on retrial.

We cannot say with any certainty that the United States Supreme Court by its opinion in *Green* intended to overrule *Stroud v. United States.* Although it may be argued persuasively that in principle the two cases are repugnant, still in a footnote to his opinion in *Green,* Justice Black said they are "clearly distinguishable." 355 *U. S.,* at *p.* 195, *n.* 15, 78 *S. Ct.*

221. Doubt of an implied vitiation is continued by the language of Justice Brennan in *Fay v. Noia,* 372 *U. S.* 391, 396 *n.* 3, 440, 83 *S. Ct.* 822, 9 *L. Ed.* 2d 837 (1963). Without referring to *Stroud,* he said among other things:

"For Noia to have appealed in 1942 would have been to run a substantial risk of electrocution. His was the grisly choice whether to sit content with life imprisonment or to travel the uncertain avenue of appeal which, if successful, might well have led to a retrial and death sentence. See, e. g., Palko v. State of Connecticut, 302 U. S. 319, 58 S. Ct. 149, 82 L. Ed. 288." 372 *U. S.,* at *pp.* 439–440, 83 *S. Ct.,* at *p.* 849.

In the appeal before us we do not find it necessary to decide whether the double jeopardy clauses of either the Federal or the State Constitutions are applicable. Nor need we concern ourselves with the question whether the reach of the due process clause of the Fourteenth Amendment of the Federal Constitution provides a bar against imposition of the death penalty on Wolf's retrial. Our decision finds its base in procedural policies which are of the essence of the administration of criminal justice.

█ Under our law a defendant convicted of murder in the first degree has an unqualified right of appeal to this Court. *State v. Welch,* 46 *N. J.* 57 (1965). The thesis of the prosecutor is that utilization of the right is conditioned upon an implied agreement to waive all possible advantages inhering in the judgment of conviction considered as a whole, if the defendant is successful in obtaining a reversal on appeal. In other words, the State says Wolf must be content to sit in prison on a life sentence, even though the trial which produced the finding of guilt of first degree murder was error-ridden; otherwise if he seeks and obtains rectification of those errors by appeal, he must at retrial of his guilt or innocence, again put his life in jeopardy. Such a choice has been described in the double jeopardy cases referred to above, as well as in *Fay v. Noia, supra,* as a "grisly" one, as "Russian roulette," as forcing a "desperate chance," and as placing a defendant in an "incredible dilemma."

■ Traditionally appellate courts have exercised a greater degree of caution in dealing with capital cases, and they have shown special concern over procedures which interfere with the right of appeal. In this case the prosecutor's thesis endangers a vital societal principle, that no person shall be deprived of his life or liberty except by a trial free from prejudicial error. Awareness of that principle naturally stimulates judicial reluctance to see the price of an appeal from an erroneous conviction set at the risk of a man's life. Such a price, in our judgment, is a hardship so acute and so shocking that our public policy cannot tolerate it. Consequently, we hold that since the State has granted the universal right of appeal, standards of procedural fairness forbid limiting the right by requiring the defendant to barter with his life for the opportunity of exercising it.

It is suggested that if the death penalty is barred at retrial a flood of automatic appeals will follow whenever the jury recommends life imprisonment in a murder case. The State pointedly says that result is inevitable because a convicted defendant with such a sentence has nothing to lose by an appeal. That is true, but as a practical matter in comparison with the total number of appeals taken annually to or heard in this Court, there are relatively few first degree murder convictions with life imprisonment sentences. So, if an additional appellate burden ensues it cannot be very great. Moreover, although the objective of deterring automatic and frivolous appeals may be a desirable one, accomplishment of the purpose by confronting the defendant with the possibility of a death sentence, if his appeal is successful, is inhumane since it does not take into account the merits of his claim of erroneous conviction of the homicide charged against him. In a choice between forcing the defendant either to surrender his right to an error free trial as well as his right of appeal, and to accept the life imprisonment sentence, or to put his life at stake again on retrial following a successful appeal, justice can follow only one course. That course is the one demanded by procedural fairness and principles of public policy, namely,

prohibition of such a fearsome election, and the restriction of available punishment at a new trial to life imprisonment, if a second conviction results. *Cf. Falzone v. Busch,* 45 *N. J.* 559 (1965). Otherwise, a defendant with perfect grounds of appeal may be deterred from seeking appellate review just the same as one whose appeal rests entirely on frivolous grounds.

■■ It is important to note that our holding here relates to situations where the defendant is tried and a verdict of life imprisonment returned by a jury. The rule does not apply in murder cases where after indictment a defendant's plea of *non-vult* is accepted by the trial court, and later, on defendant's application to it or on his appeal, the plea and resulting sentence, whether life or that which may be imposed for second degree murder (see *N. J. S.* 2A:113–3), are vacated or reversed. In such case defendant's life has never been in jeopardy. If the trial judge accepts the *non-vult* plea he cannot sentence the accused to death. *State v. Sullivan,* 43 *N. J.* 209, 245–246 (1964). Therefore, when the plea is expunged on defendant's application, he should be put back in the position he occupied with respect to the indictment before the plea was entered, *State v. Williams,* 39 *N. J.* 471, 480, *certiorari* denied 374 *U. S.* 855, 83 *S. Ct.* 1924, 10 *L. Ed. 2d* 1075 (1963) ; *In re Smigelski,* 30 *N. J.* 513, 525 (1959) ; *Sanders v. State,* 85 *Ind.* 318, 44 *Am. Rep.* 29 (1882), and the State may seek the death penalty at trial.

As we have said earlier in this opinion, there is no case in New Jersey where an appellate tribunal has decided the precise issue presented here. There is a *dictum* contrary to the rule we now adopt in *State v. O'Leary,* 110 *N. J. L.* 36 (*E. & A.* 1933), and *State v. King,* 106 *N. J. L.* 338 (*E. & A.* 1930). To the extent of the conflict those cases are overruled. Only a few cases are to be found throughout the country which have considered the problem. Iowa (*State v. Kneeskern,* 203 *Iowa* 929, 210 *N. W.* 465, 473 (1926)) reached a result at odds with our present holding and in conflict with that expressed in *People v. Henderson, supra.* An early Florida case (*Mann v. State,* 23 *Fla.* 610, 3 *So.* 207, 211 (1877)) like-

wise seems opposed. Both states dealt with the situation long before the United States Supreme Court spoke so strongly in *Green v. United States, supra.* Whatever the rule elsewhere, in our judgment, the view we now take represents the only procedural standard consistent with the just administration of the criminal law.

For the reasons outlined above, we hold that the State is barred from seeking the death penalty on retrial. Accordingly the order of the trial court is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For reversal*—None.