Antranik PAROUTIAN, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 67–C–692.

United States District Court
E. D. New York.

Feb. 14, 1968.

Antranik Paroutian, pro se.

Joseph P. Hoey, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y. (Thomas J. O'Brien, Brooklyn, N. J., of counsel), for respondent.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Petitioner moves, pursuant to section 2255 of title 28, United States Code,[1]

1. § 2255. Federal custody; remedies on motion attacking sentence.

A prisoner in custody under sentence of a court established by Acts of Con-

for an order vacating or modifying sentences imposed on September 27, 1962 for violations of the federal narcotics laws as charged in Counts Nos. 2 and 3 of Indictment No. 60–CR–317.[2]

Actually, petitioner was convicted twice on the same counts. On the first occasion, after a jury returned a guilty verdict, the Honorable Joseph C. Zavatt sentenced him to five (5) years on Count No. 2 and twenty (20) years plus a twenty thousand dollar ($20,000.00) fine on Count No. 3, the prison terms to run concurrently.[3] Upon remand, the matter was tried to the court, and the undersigned imposed a twenty (20) year sentence plus a fine of twenty thousand ($20,000.00) dollars on each count, the prison terms again to run concurrently. The judgment of conviction was affirmed,[4] and a section 2255 petition, based upon the use of certain admissions allegedly obtained in violation of petitioner's fifth and sixth amendment rights, also proved unsuccessful.[5]

The present petition, as amended, attacks the validity of the sentences upon the following grounds:

(1) The indictment was improperly obtained in that:

(a) it was supported by perjured and coerced testimony;

(b) a government agent was present while another witness was testifying before the grand jury, in violation of Rule 6(d) of the Federal Rules of Criminal Procedure;

(2) Assistant United States Attorney Joseph J. Marcheso failed to correct Luiz DeAlmeida's testimony relating to a promise of leniency[6] and the latter's expectation of a reward, which corrections would have impeached DeAlmeida's credibility;

(3) The government failed to comply with petitioner's demands for statements under section 3500 of title 18 in that:[7]

(a) the government failed to produce, upon a proper demand, two letters which DeAlmeida allegedly sent to one Ramon Sanchez, Box 1188, New York, Ramon Sanchez being Agent Moduro's pseudonym;

(b) the government failed to produce, upon proper demands, statements of Agents Pera and Moduro that allegedly were given to a French court in connection with the prosecution of one Gabriel Graziani; and

---

gress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

2. Count No. 1 charged petitioner with having purchased, sold, dispensed or distributed narcotic drugs without the appropriate tax stamps, in violation of section 4704(a) of title 26. Counts Nos. 2 and 3 related to alleged violations of section 174 of title 21.

3. See, United States v. Paroutian, 299 F.2d 486 (2d Cir. 1962).

4. United States v. Paroutian, 319 F.2d 661, (2d Cir. 1963), cert. denied, 375

U.S. 981, 84 S.Ct. 494, 11 L.Ed.2d 426 (1964).

5. Paroutian v. United States, 370 F.2d 631 (2d Cir.), cert. denied, 387 U.S. 943, 87 S.Ct. 2077, 18 L.Ed.2d 1331 (1967). Petitioner had relied upon United States v. Massiah, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), but that case was held to be distinguishable.

6. DeAlmeida pleaded guilty to a charge which had been brought against him in the Southern District of New York and received a suspended sentence.

7. The pertinent part of section 3500 reads:
* * * the court shall * * * order the United States to produce any statement * * * of the witness in the possession of the United States which relates to the subject matter as to which the witness testified.

(4) The prison terms and fines imposed improperly exceeded those imposed under the judgment of conviction entered after the first trial.

■■ First, "[i]t is well settled that an indictment may not be collaterally attacked under § 2255 except for lack of jurisdiction or an infringement of [a] defendant's constitutional rights." United States v. Spada, 331 F.2d 995, 996 (2d Cir.), cert. denied, 379 U.S. 865, 85 S.Ct. 130, 13 L.Ed.2d 67 (1964). Moreover, where the federal court's jurisdiction was properly predicated upon an existing federal criminal statute, the sufficiency of an indictment, generally, is not subject to collateral attack. Rosecrans v. United States, 378 F.2d 561, 566 (5th Cir. 1967). Petitioner does not attack the sufficiency of the indictment, however, i. e., he does not claim that it cannot be reasonably construed as charging the offense for which he was convicted. See, Link v. United States, 352 F.2d 207, 209 (8th Cir. 1965), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966). Instead, he complains that the kind of evidence adduced before the grand jury, and the manner in which that body's investigation was conducted, resulted in violations of his federal constitutional rights. C. f., United States ex rel. Miller v. Brierley, 271 F.Supp. 526, 527 (E.D.Pa.1967).

■■ Nevertheless, even if petitioner's attacks upon the grand jury proceedings are viewed in such a light, his contentions do not supply any basis for the requested relief. Indictments are not open to challenge because allegedly inadequate or incompetent evidence was submitted to the grand jury. United States v. Blue, 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 1416 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); Lawn v. United States, 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The critical and final place to detect perjury is not before the grand jury, but, rather where a defendant has the opportunity to present evidence in his own behalf and to cross-examine his accusers. See, Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128, 132 (1962), cert. denied, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963). See also, United States v. Pheribo, 346 F.2d 559 (2d Cir.), cert. denied, 382 U.S. 871, 86 S.Ct. 149, 15 L.Ed.2d 110 (1965).

■ Petitioner's assertion that his sentence must be vacated because an allegedly unauthorized interpreter was present while certain testimony was being given to the grand jury, in violation of Rule 6(d), must also fail. Even assuming that an agent may not serve as an interpreter within the meaning of the Rule, such a defect is not of constitutional dimensions, and has traditionally been raised, and properly so, either on a pre-trial motion to dismiss the indictment or on appeal. See, Shushan v. United States, 117 F.2d 110, 133 A.L.R. 1040 (5th Cir.), cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941); Latham v. United States, 226 F. 420, L.R.A.1916O, 1118 (5th Cir. 1915); United States v. Borys, 169 F. Supp. 366 (D.Alaska 1959); United States v. Carper, 116 F.Supp. 817 (D.D. C.1953); United States v. Smyth, 104 F.Supp. 283 (N.D.Cal.1952); United States v. Powell, 81 F.Supp. 288 (E.D. Mo.1948); United States v. Weathers, 21 F.Supp. 763 (N.D.Ga.1937); United States v. Goldman, 28 F.2d 424 (D.Conn. 1928); United States v. Huston, 28 F.2d 451 (N.D.Ohio 1928); United States v. Rosenthal, 121 F. 862 (S.D.N.Y.1903).

Secondly, petitioner's claim that the Assistant United States Attorney suppressed evidence which would have impeached the credibility of an important government witness by demonstrating the witness's motives for testifying is spurious. DeAlmeida's hopes and expectations concerning possible consideration from the sentencing judge in the Southern District of New York was fully explored at the trial, and petitioner's argument was fully brought home to the court. See United States v.

Pheribo, supra. In fact, DeAlmeida had already received a suspended sentence by the time that he was called to testify at the second trial.[8]

Thirdly, petitioner's assertion that the government improperly failed to produce certain section 3500 statements cannot be sustained. At the trial, the government represented that a search of its voluminous case file had failed to uncover any producible statements, and suggested that DeAlmeida be cross-examined about the existence of the materials.[9] Instead, the entire file was submitted to the court,[10] and petitioner's attorney was given the opportunity to examine one Howard Franciscus, then supervisory assistant to the warden at the detention headquarters where DeAlmeida had been held, about the alleged transmission of certain letters.[11]

■ Petitioner first raised a question about these letters at the time that his petition for certiorari from the affirmance of the dismissal of his previous section 2255 application was pending. In response to the allegations, the Solicitor General simply advised the Court that the detention headquarters' records indicated that DeAlmeida had written and sent two letters to Sanchez, Agent Moduro's assumed name. What petitioner has failed to demonstrate, however, is that the subject letters related to the witness's testimony, that they have been or are now within the government's possession or control, or that the government knowingly withheld them.

The same can be said about the statements that Agents Pera and Moduro are alleged to have made to a French court. Accordingly, the court rejects as insufficient petitioner's claim for relief based upon the government's failure to produce certain section 3500 material.

■ The question presented by petitioner's final claim is whether, following conviction upon a retrial, a court may lawfully impose a sentence which is harsher than the one originally fixed. Since the court is constrained to hold that this question must be answered in the negative, the judgment of conviction must be corrected as hereinafter ordered.

### Double Jeopardy

While the general rule throughout both the state and federal courts has been that harsher penalties following reconviction of a successful appellant are permissible, See, Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606, 610 (1965); see e. g., King v. United States, 69 App.D.C. 10, 98 F.2d 291 (1938), recently there has been a resurgence of judicial and academic interest in the bounds of the double jeopardy provision.[12] For example, this circuit has held that at least the basic core of that guarantee can be ranked as fundamental within the confines of the doctrine of selective incorporation, under which certain segments of the Bill of Rights are deemed applicable to the states through the due process clause of the fourteenth amendment. United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844, 853 (2d Cir. 1965), cert. denied sub nom. Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966).

Actually, the doctrine of double jeopardy is " * * * comprised of three separate though related rules, prohibiting (1) reprosecution for the same offense following acquittal, (2) reprosecution for the same offense following conviction, and (3) multiple punishment for

---

8. Petitioner also gratuitously charges that the prosecuting attorney was criticized by the court for similar conduct in Kyle v. United States, 297 F.2d 507 (2d Cir. 1961). The accusation is erroneous.

9. Transcript of testimony, p. 270 et seq.

10. Transcript of testimony, pp. 353–354.

11. Transcript of testimony, p. 304 et seq.

12. U.S.Const. amend. V:
    * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *.

the same offense."[13]  Patton v. North Carolina, 381 F.2d 636, 643–644 (4th Cir. 1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871, Jan. 23, 1968, (footnotes omitted);  see, Comment, Twice in Jeopardy, 75 Yale L.J. 262 (1965).

On the present petition, the court is called upon to determine whether the third of the above rules has been transgressed.[14]

■ One widely accepted aspect of the prohibition against multiple punishments for the same offense, is the rule that increasing one's sentence after he has commenced his service violates the double jeopardy clause.  United States v. Benz, 282 U.S. 304, 306–307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931);  United States v. Sacco, 367 F.2d 368, 369 (2d Cir. 1966);  United States v. Adams, 362 F.2d 210 (6th Cir. 1966);  Kennedy v. United States, 330 F.2d 26, 27 (9th Cir. 1964).  Unless an accused is held to waive such protection by seeking a new trial, there would appear to be no constitutionally significant distinction between such increases and the imposition of harsher penalties following retrial.[15] Patton v. North Carolina, supra 381 F.2d at 645.

■ Waiver connotes, however, the voluntary relinquishment of a known right.  Cf. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Where one is required to barter his constitutional protection from a more severe penalty in order to secure the reversal of

13. Indeed, the multifaceted nature of the doctrine was alluded to in the landmark case of Palko v. Connecticut, 302 U.S. 319, 328, 58 S.Ct. 149, 153, 82 L.Ed. 288 (1937).

14. "If there is anything well-settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense." Ex parte Lange, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872 (1874).  This guarantee is to be broadly and liberally construed. Id. at 178.

15. Compare Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), with Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed. 2d 199 (1957).  In *Stroud* the jury found the defendant guilty of first degree murder, but recommended dispensing with the death penalty.  Following a successful appeal, the defendant was tried for the same crime and was again convicted. This time, however, no recommendation for mercy was made and he was sentenced to death.  The Supreme Court affirmed, declaring that since each conviction was for the same offense the defendant had not been placed in second jeopardy.  In *Green* the accused was charged with arson and first degree murder but was found guilty of arson and second degree murder.  On remand he was convicted of first degree murder and sentenced to death.  The Supreme Court reversed, asserting that since the first jury had been given a full opportunity to return a verdict on the graver offense, and there had been no extraordinary circumstances which had prevented it from doing so, that Green could not have been retried for that offense.  Indeed, the Court indicated that the legal fiction of implied acquittal was legitimately applicable in such circumstances.  Justice Frankfurter, dissenting, pointed to the difficulty in distinguishing the two cases:

"As a practical matter and on any basis of human values, it is scarcely possible to distinguish a case in which the defendant is convicted of a greater offense from one in which he is convicted of an offense that has the same name as that of which he was previously convicted but carries a significantly different punishment, * * *."
Green v. United States, supra at 213, 78 S.Ct. at 237.

The California Supreme Court has agreed with Justice Frankfurter, that *Green* vitiated *Stroud,* and has concluded, under a state provision substantially identical to the fifty amendment's double jeopardy clause, that an accused may not be given a more severe sentence following a successful attack of his first conviction. People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (1963) (Traynor, J.).  But see, Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966);  United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).  Furthermore, it is too late in the day to argue that the vitality of constitutional guarantees varies with the kind of punishment imposed. See, Gideon v. Wainwright, 373 U.S. 335, 348, 83 S.Ct. 792, 799, 9 L.Ed.2d 799 (1963) (Clark, J., concurring).

a constitutionally defective conviction, it ignores the "elementary psychological realities" to talk in terms of meaningful choice. See, United States ex rel. Hetenyi v. Williams, supra, 348 F.2d at 859. Since "[t]he law should not, and * * does not, place the defendant in such an incredible dilemma," petitioner cannot be held to have waived his rights under the double jeopardy clause.[16] See, Green v. United States, supra n. 15 at 193, 78 S.Ct. at 227. See also, Fay v. Noia, 372 U.S. 391, 439–440, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); State v. Wolf, 46 N.J. 301, 216 A.2d 586, 12 A.L.R.3d 970 (1966); Note, 80 Harv.L.Rev. 891, 897 (1967). But see, United States ex rel. Starner v. Russell, 378 F.2d 808, 811–812 (3d Cir. 1967).

Furthermore, the court agrees with the Fourth Circuit that a defendant's rights are not adequately safeguarded even if a second sentencing judge may increase the prior sentence only in special circumstances. Patton v. North Carolina, supra 381 F.2d at 641. The sentencing judge's traditional discretion must bow to the competing policies involved.[17] See, Marano v. United States, note 16 supra. See generally, Van Alstyne, supra; Note, 80 Harv.L.Rev. supra.[18]

Accordingly, the sentence set forth in the judgment of conviction is corrected to conform to the original sentence imposed by Judge Zavatt; i. e., the prison term imposed under Count No. 2 is reduced to five years and the fine of twenty thousand ($20,000.00) dollars imposed thereunder is remitted. The punishment imposed under Count No. 3 remains unaffected, and the terms imposed are to run concurrently as originally stated.

An amended judgment has been signed this date, nunc pro tunc. The petition is denied in all other respects, and it is

So ordered.

The clerk is directed to forward a copy of this Memorandum of Decision and Order to the Petitioner.

16. Although the petitioner was not deterred from seeking post-conviction relief by the fear of a harsher sentence, it has been suggested that such a possibility runs counter to the notion of an unfettered right to appeal. The fear of increased punishment is far from imaginery, see, Note, 1965 Duke L.J. 395, 399 n. 25, and its fostering may well amount to a violation of due process. See, Fay v. Noia, supra; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Green v. United States, note 15 supra; Griffen v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Cichos v. Indiana, note 15, supra 385 U.S. at 81–82, 87 S.Ct. 274 (Fortas, J., dissenting); United States v. Ewell, note 15, supra 383 U.S. at 128, 86 S.Ct. at 780 (Fortas, J., dissenting); Patton v. North Carolina, supra; Marano v. United States, 374 F.2d 583, 585 (1st Cir. 1967); People v. Henderson, note 15, supra; State v. Turner, 429 P.2d 565 (Or.1967).

17. "Even the *appearance* of improper motivation is a disservice to the administration of justice." Patton v. North Carolina, supra 381 F.2d at 641. In any case, the undersigned was not influenced by any facts or circumstances that were unavailable to the original sentencing judge.

18. It has also been suggested that present rules regarding resentencing also violate the defendant's right to the equal protection of the laws. To deny protection from increased punishment only to those who successfully invoke their post-conviction remedies is at best anomolous. Moreover, one who receives the maximum sentence appeals more freely than those who presumably are less of a danger to society or, perhaps, less culpable. See, Patton v. North Carolina, supra at 641–643; Whaley v. North Carolina, 379 F.2d 221 (4th Cir. 1967); Van Alstyne, supra; Note, 80 Harv.L.Rev., supra. The law does not permit a state to lay an unequal hand on those who commit the same quality of offense without a reasonable basis. Cf., McLaughlin v. Florida, 379 U.S. 184, 194, 85 S.Ct. 283, 290, 13 L.Ed.2d 222 (1964). Distinctions between criminal defendants must be based upon reason, not invidious discrimination. Cf., Griffen v. Illinois, 351 U.S. 12, 76 S.Ct. 585 (1956).