PEOPLE *v.* PAYNE

Opinion of the Court

1. Criminal Law—Sentence—Increased Sentence—Consititutional Law.

Imposition of an increased sentence upon conviction after a new trial, where the circumstances are the same as in the prior proceeding and the record does not show grounds supporting the increase, infringes on the constitutional right of appeal.

2. Criminal Law—Sentence—Increased Sentence.

Judgment of trial court sentencing defendant to 25 to 50 years' imprisonment on conviction of assault with intent to commit murder, when previously defendant had pled guilty before a different judge to the same charge and received a shorter sentence, *held,* proper, where the trial court heard details of the crime, was able to observe and judge the defendant and increased his sentence, not as a punitive measure against defendant for appealing, but because of the nature of the offense and the court's impression of the defendant (CL 1948, § 750.83).

3. Appeal and Error—Punishment—Statute.

The Court of Appeals does not have supervisory control over punishment imposed for crime which is within the provisions of the statute providing for punishment.

---

References for Points in Headnotes

[1, 2, 4–6] 21 Am Jur 2d, Criminal Law §§ 570, 572.
[3] 21 Am Jur 2d, Criminal Law §§ 536, 538.
  5 Am Jur 2d, Appeal and Error § 938.
[6] 21 Am Jur 2d, Criminal Law §§ 533, 545.

DISSENTING OPINION

T. M. BURNS, J.

4. CRIMINAL LAW—SENTENCE—INCREASED SENTENCE.

    *Increasing the sentence of a criminal defendant, convicted on his plea of guilty to assault with intent to commit murder, from a term of 19 to 40 years to a term of 25 to 50 years after he had successfully appealed and was granted a new trial, where the record does not show anything that could be legitimately taken into consideration in sentencing which was not known to the judge at the original proceeding, and after the defendant had already served almost five years, results in an erroneous denial of credit for time served and infringes upon the constitutional right of appeal (CL 1948, § 750.83; CLS 1961, § 769.11a).*

5. CRIMINAL LAW—SENTENCE—INCREASED SENTENCE.

    *After appeal or post-conviction proceeding has resulted in retrial for errors other than erroneous sentence and defendant has been reconvicted, no harsher sentence may be given than that originally imposed and defendant, if the sentence is incarceration, may not be sentenced to a term longer than the time to be served upon his initial sentence.*

6. CRIMINAL LAW—SENTENCE—INCREASED SENTENCE.

    *Imposition of a greater sentence without practical credit for time served, on retrial of a criminal defendant who has vindicated his constitutional rights by exercising the right of appeal forces defendant, whose constitutional rights had been violated in a way which resulted in an invalid conviction, to suffer this violation for fear that on retrial he would receive an even greater penalty, a price which cannot be exacted for invocation of a right.*

Appeal from Berrien, Chester J. Byrns, J. Submitted Division 3 April 10, 1969, at Grand Rapids. (Docket No. 4,719.) Decided June 25, 1969. Leave to appeal granted January 21, 1970. See 383 Mich 760.

Leroy Payne was sentenced to 19 to 40 years' imprisonment on his plea of guilty to a charge of assault with intent to commit murder. Upon new trial, defendant was again convicted of the offense and sentenced to 25 to 50 years' imprison-

ment with credit for time already served. Defendant appeals. *Affirmed.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John T. Hammond,* Prosecuting Attorney, for the people.

*Philip A. Brown,* for defendant.

Before: Quinn, P. J. and Holbrook and T. M. Burns, JJ.

Quinn, P. J. December 14, 1962, defendant, represented by counsel, pleaded guilty to a charge of assault with intent to commit murder, CL 1948, § 750-.83 (Stat Ann 1962 Rev § 28.278). Thereafter, defendant was sentenced to prison for a term of 19 to 40 years. Judge Hadsell presided at the plea and sentence. Judge Hadsell's term of office expired January 1, 1967 and he was replaced by Judge Byrns. 378 Mich (v).

Following a remand from the Court of Appeals for that purpose, a hearing was held June 15, 1967 to determine the voluntariness of confessions, admissions and statements against interest made by defendant prior to his plea. As a result of the hearing, the trial court suppressed all confessions, admissions and statements against interest, set aside the plea, vacated sentence and remanded the case for preliminary examination.

At the conclusion of the examination, defendant was bound over for trial. His motion for change of venue was granted, and he was tried before Judge Byrns and a jury in Kent county. August 24, 1967, the jury returned a verdict of guilty as charged. Thereafter defendant was sentenced to prison for a term of 25 to 50 years, with credit for time already

served. His appeal raises 5 issues, 4 of which do
not merit discussion.

Defendant contends it was reversible error for
Judge Byrns to impose a more severe sentence than
did Judge Hadsell. In *People* v. *Poole* (1967), 7
Mich App 237, this Court held such action was not
error. In *People* v. *Mulier* (1968), 12 Mich App
28, this Court held such action was reversible er-
ror. The cases are not in conflict, however; factual
differences permit each pronouncement to stand
without encroaching on the other. In *Poole,* a dif-
ferent judge imposed the harsher sentence and rea-
son for such action appeared in the record. In
*Mulier,* the same judge imposed the harsher sen-
tence for no reason apparent on the record. The
distinction is noted in *Mulier* at page 33:

"To allow the imposition of a harsher sentence
after a rehearing, where the offense, the plea, and
the sentencing judge are the same as in the prior
proceeding and the record is barren of any grounds
tending to support the harsher sentence, unduly in-
fringes upon the constitutional right of appeal."

This case of Payne is stronger than *Poole, supra.*
In *Poole,* both convictions were by plea. In Payne,
the first conviction was by plea and the second was
by jury verdict. A trial affords more opportunity
to hear all details, to observe and judge a defend-
ant than does a summary plea proceeding, a fact
noted by Judge Byrns. The trial judge noted the
right of every citizen to seek appellate relief and
the fact that obtaining such relief should in no way
affect a subsequent sentence. The trial judge then
stated that the sentence he was about to impose
was not because defendant had appealed but by rea-
son of the nature of the crime and impressions
formed of defendant during 3 days of trial. The
trial judge noted that the statute under which de-

fendant was convicted authorized a life sentence
or any term of years, and except for defendant's
past history (poor family background, good school,
service and prison records), a life sentence would
have been imposed.

On this record, we conclude that we do not have
supervisory control over punishment within the pro-
visions of the statute, *Poole, supra,* and that *Mulier,
supra,* is inapplicable.

Affirmed.

Holbrook, J., concurred.
*Addendum July 10, 1969:*

Since the majority opinion and the dissent were
written, the United States Supreme Court has de-
cided *North Carolina* v. *Pearce* and *Simpson* v. *Rice*
(1969), 395 US 711 (89 S Ct 2072, 23 L Ed 2d 656).
A revised dissent has been filed citing these deci-
sions as supporting the position expressed in the
dissent. These same authorities are incorporated
by reference in the majority opinion as supporting
authority.

T. M. Burns *(dissenting).* I concur with my
brothers' disposition of all issues raised in this ap-
peal save the question of whether the imposition of
a more severe sentence upon retrial, after the de-
fendant gained reversal of his prior conviction on
constitutional grounds, is permissible. On this ques-
tion of a more severe sentence on retrial, I must re-
spectfully dissent.

The majority here relies on an extremely tenuous
distinction between the cases of *People* v. *Poole*
(1967), 7 Mich App 237, and *People* v. *Mulier*
(1968), 12 Mich App 28, based on the fact that here
and in *Poole, supra,* the judge on retrial was dif-
ferent than the judge in the original trial while in

*Mulier, supra,* the same judge presided over both trials. Although this seeming distinction has been noted recently in *People* v. *Parm* (1968), 15 Mich App 303, it is a distinction without real meaning or substance.

Further, in *Poole, supra,* the question of infringing upon the constitutional right of appeal was not present. In *Poole* the defendant *pled guilty* and then made a motion for new trial on the ground that he had not been informed of his right to counsel at the arraignment. Even though the defendant had been represented by counsel at the arraignment, the trial judge granted motion for new trial and the defendant pled guilty again. The question of imposing a harsher sentence for exercising the right of appeal as granted by the Constitution of this state was not raised. Const 1963, art 1, § 20.

The majority mentions justification in the record for increasing the sentence upon retrial present in *Poole* and here which was not present in *Mulier* and I suppose in *Parm, supra.* After a careful review of the record in this case, I fail to find anything that might legitimately be taken into consideration in sentencing which was not known to the judge at the first sentencing hearing in March of 1963. The self-serving declaration of the sentencing judge that he was not imposing a harsher sentence because defendant had appealed and that he was giving the defendant credit for time served does not change the practical realities of the situation.

The effect of increasing the original sentence of 19 to 40 years, to 25 to 50 years with credit for time served when the defendant has already served almost 5 years is, at least, to deny him credit for time served which is impermissible under *Moore* v. *Parole Board* (1967), 379 Mich 624, which reversed

4 Mich App 261.  CLS 1961, § 769.11a (Stat Ann
1965 Cum Supp § 28.1083(1)).

The increased sentence which was imposed upon
the defendant here is clearly impermissible under
the recent United States Supreme Court case  of
*North Carolina* v. *Pearce* (1969), 395 US 711 (89 S
Ct 2072, 23 L Ed 2d 656), even though the opinion
of the Court in that case which was signed by only
three justices, would permit a harsher sentence un-
der certain conditions.

Justice Stewart, speaking for himself, Justice
Brennan and Chief Justice Warren, said at 395 US
725, 726 (89 S Ct 2080, 2081, 23 L Ed 2d 669, 670):

"Due process of law, then, requires that vindictive-
ness against a defendant for having successfully at-
tacked his first conviction must play no part in
the sentence he receives after a new trial.  And since
the fear of such vindictiveness may unconstitution-
ally deter a defendant's exercise of the right to ap-
peal or collaterally attack his first conviction, due
process also requires that a defendant be freed of
apprehension of such a retaliatory motivation on
the part of the sentencing judge.

"In order to assure the absence of such a motiva-
tion, we have concluded that whenever a judge im-
poses a more severe sentence upon a defendant after
a new trial, the reasons for his doing so must af-
firmatively appear.  *Those reasons must be based
upon objective information concerning identifiable
conduct on the part of the defendant occurring after
the time of the original sentencing proceeding..* And
the factual data upon which the increased sentence
is based must be made part of the record, so that
the constitutional legitimacy of the increased sen-
tence may be fully reviewed on appeal".  (Emphasis
added.)

There is no such "*  *  * objective information
concerning identifiable conduct on the part of the

defendant after the time of the original sentence" in the record on appeal. Lacking this affirmative showing, a more severe sentence cannot be allowed on retrial.

Yet, I would join Justices Douglas and Marshall, and Justice Harlan, who in separate opinions go beyond the holding of the Court, and say that since the Court has made the double jeopardy clause of the Fifth Amendment applicable to the states in *Benton* v. *Maryland* (1969), 395 US 784 (89 S Ct 2056, 23 L Ed 2d 707), a harsher sentence may not be imposed upon retrial after a successful appeal. *North Carolina* v. *Pearce, supra,* pp 46, 48.*

The majority here, as in *North Carolina* v. *Pearce, supra,* express the view as stated in *Poole, supra,* p 242:

"Defendant knowingly took a risk in seeking a new trial and should not be heard to complain because a new minimum sentence may increase the time he might serve".

The effect of the majority opinion here is to say to a defendant, whose constitutional rights have been violated at trial, that you may vindicate your rights, but if the appeals court reverses the conviction, you may be given a longer sentence which will cover the time you were illegally in prison even though you are "given credit for time served". The majority opinion in this respect is declaring their adherence to the "total waiver" theory of double jeopardy expressed in *Stroud* v. *United States* (1919), 251 US 15, 18 (40 S Ct 50, 64 L Ed 103), which has been substantially undercut, if not totally placed in disrepute, by *Green* v. *United States* (1957), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199). *North Carolina*

---

* This Court held in *People* v. *Bower* (1966), 3 Mich App 585, 589, that the 5th Amendment double jeopardy clause was applicable through the 14th Amendment.

v. *Pearce, supra,* (concurring Justices Douglas and
Marshall), also Justice Harlan (concurring and dis-
senting).

.In *Green* v. *United States* (1957), 355 US 184 (78
S Ct 221, 2 L Ed 199), the Court enunciated the
"limited waiver" doctrine for interpreting the dou-
ble jeopardy provisions of the Fifth Amendment.
Under this doctrine a defendant only waived the bar
against double jeopardy by appealing his convic-
tion to the extent necessary for his purposes. The
effect of this doctrine is to forbid the retrial of a
defendant for a greater offense than the one he was
originally convicted of as an unconscionable pre-
mium upon a successful appeal.

Justice Douglas, speaking of the effect of *Green*
on the practice of allowing a harsher sentence on
retrial after an appeal, says:

"The theory of double jeopardy is that a person
need run the gantlet only once. The gantlet is
the risk of the range of punishment which the State
or Federal Government imposes for that particular
conduct. It may be a year to 25 years, or 20 years
to life, or death. He risks the maximum permissible
punishment when first tried. That risk having been
faced once need not be faced again. And the fact
that he takes an appeal does not waive his con-
stitutional defense of former jeopardy to a second
prosecution. *Green* v. *United States,* 355 US 184,
191–193 (78 S Ct 221, 225, 227, 2 L Ed 2d 199, 206,
207, 61 ALR 2d 1119).

"In the *Green Case,* the defendant was charged
with arson on one count and on a second count was
charged either with first degree murder carrying a
mandatory death sentence, or second degree murder
carrying a maximum sentence of life imprisonment.
The jury found him guilty of arson and second
degree murder but the verdict was silent as to first
degree murder. He appealed the conviction and

obtained a reversal. On a remand he was tried again. This time he was convicted of first degree murder and sentenced to death—hence his complaint of former jeopardy. We held that the guarantee of double jeopardy applied and that the defendant, having been 'in direct peril of being convicted and punished for first degree murder at his first trial' could not be 'forced to run the gantlet' twice. 355 US at p 190 (78 S Ct at p 225, 2 L Ed 2d at p 206).

"It is argued that that case is different because there were two different crimes with different punishments provided by statute for each one. That, however, is a matter of semantics. 'It is immaterial to the basic purpose of the constitutional provision against double jeopardy whether the Legislature divides a crime into different degrees carrying different punishments, or allows the court or jury to fix different punishments for the same crime.' *California* v. *Henderson* (1963), 60 Cal 2d 482, 497, (35 Cal Rptr 77, 86) (Traynor, J.).

"From the point of view of the individual and his liberty, the risk here of getting from one to 15 years for specified conduct is different only in degree from the risk in *Green* of getting a life imprisonment or capital punishment for specified conduct." *North Carolina* v. *Pearce,* 395 US 711, 728 (89 S Ct 2089, 2090, 23 L Ed 2d 656, 671).

Justice Harlan, in a very scholarly opinion, supports Justice Douglas' reliance on Green. Justice Harlan says at 395 US 745–751 (89 S Ct 2085–2089, 23 L Ed 2d 680–684).

"Given *Benton,* it is my view that the decision of this Court in *Green* v. *United States* (1958), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199, 61 ALR2d 1119) from which I dissented at the time, points strongly to the conclusion, also reached by my Brother Douglas, *ante,* at 726, that the Double Jeopardy Clause of the Fifth Amendment govern both issues presently decided by the Court. Accordingly, I

join in Part I of the Court's opinion, and concur in the result reached in Part II, except in one minor respect.

"*Green* v. *United States, supra,* held in effect that a defendant who is convicted of a lesser offense included in that charged in the original indictment, and who thereafter secures reversal, may be retried only for the lesser included offense. Mr. Justice Frankfurter observed, in a dissent which I joined, that:

" 'As a practical matter, and on any basis of human values, it is scarcely possible to distinguish a case in which the defendant is convicted of a greater offense from one in which he is convicted of an offense that has the same name as that of which he was previously convicted but carries a significantly [increased] * * * punishment. * * *' *Id.,* at 213. Further reflection a decade later has not changed my view that the two situations cannot be meaningfully distinguished.

"Every consideration enunciated by the Court in support of the decision in *Green* applies with equal force to the situation at bar. In each instance, the defendant was once subjected to the risk of receiving a maximum punishment, but it was determined by legal process that he should receive only a specified punishment less than the maximum. See *id.,* at 190. And the concept or fiction of an 'implied acquittal' of the greater offense, *ibid.,* applies equally to the greater sentence: in each case it was determined at the former trial that the defendant or his offense was of a certain limited degree of 'badness' or gravity only, and therefore merited only a certain limited punishment. Most significantly, perhaps, in each case a contrary rule would place the defendant considering whether to appeal his conviction in the same 'incredible dilemma' and confront him with the same 'desperate choice.' *Id.,* at 193. His decision whether or not to appeal would be burdened by the

consideration that success, followed by retrial and conviction, might place him in a far worse position that if he remained silent and suffered what seemed to him an unjust punishment. In terms of *Green,* that the imposition of a more severe sentence on retrial is a matter of pure *chance,* rather than the result of purposeful retaliation for having taken an appeal, renders the choice no less 'desperate.'

"If, as a matter of policy and practicality, the imposition of an increased sentence on retrial has the same consequences whether effected in the guise of an increase in the degree of offense or an augmentation of punishment, what other factors render one route forbidden and the other permissible under the Double Jeopardy Clause? It cannot be that the provision does not comprehend 'sentences'—as distinguished from 'offenses'—for it has long been established that once a prisoner commences service of sentence, the Clause prevents a court from vacating the sentence and then imposing a greater one. See *United States* v. *Benz* (1931), 282 US 304, 306, 307 (51 S Ct 113, 114, 75 L Ed 354, 356, 357) ; *Ex parte Lange* (1873), 85 US (18 Wall) 163, 168, 173 (21 L Ed 872, 876, 877).

"The Court does not suggest otherwise, but in its view, apparently, when the conviction itself and not merely the consequent sentence has been set aside, or when either has been set aside at the defendant's behest, the 'slate has been wiped clean,' *ante,* at 9, and the Double Jeopardy Clause presents no bar to the imposition of a sentence greater than that originally imposed. In support of this proposition, the Court relies chiefly on two cases, *Stroud* v. *United States* (1919), 251 US 15 (40 S Ct 50, 64 L Ed 103) and *United States* v. *Ball* (1896), 163 US 662 (16 S Ct 1192, 41 L Ed 300). I do not believe that either of these cases provides an adequate basis for the Court's seemingly incongruous conclusion.

"*Stroud* v. *United States, supra,* held that a defendant who received a life sentence for first-de-

gree murder could, upon securing a reversal of the conviction, be retried for first degree murder and sentenced to death. However, the opinion does not explicitly advert to the question whether the Double Jeopardy Clause bars the imposition of an increased punishment, and an examination of the briefs in that case confirms the doubt expressed by the Court of Appeals in *Patton* v. *North Carolina* (CA4, 1967), 381 F2d 636, 644, whether this question was squarely presented to the Court. Assuming that *Stroud* stood for the proposition which the majority attributes to it, that decision simply cannot be squared with the subsequent decision in *Green* v. *United States* (1958), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199, 61 ALR2d 1119). See *id.,* at 213; *People* v. *Henderson* (1963), 60 Cal 2d 482 (386 P2d 677).

"The Court does not rest solely on this ambiguous and doubtful precedent, however. Its main point seems to be that to limit the punishment on retrial to that imposed at the former trial 'would be to cast doubt upon the whole validity of the basic principle enunciated in *United States* v. *Ball,*' (1896), 163 US 662 (16 S Ct 1192, 41 L Ed 300), and its progeny. 395 US 748 (23 L Ed 2d 683).

"*Ball* held, simply, that a defendant who succeeds in getting his first conviction set aside may thereafter be retried for the same offense of which he was formerly convicted. This is indeed, a fundamental doctrine in our criminal jurisprudence, and I would be the last to undermine it. But *Ball* does not speak to the question of what *punishment* may be imposed on retrial. I entirely fail to understand the Court's suggestion, unless it assumes that *Ball* must stand or fall on the question-begging notion that, to quote the majority today, 'the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean.' 395 US 749 (23 L Ed 2d 683).

"In relying on this conceptual fiction, the majority forgets that *Green* v. *United States, supra,* prohibits the imposition of an increased punishment

on retrial precisely because convictions are usually set aside only at the defendant's behest, and not in spite of that fact. 355 US at 193–194 (78 S Ct at 227, 2 L Ed 2d, at 207, 208, 61 ALR2d 1119); at 395 US 749 (89 S Ct 2088, 23 L Ed 2d 683): the defendant's choice to appeal an erroneous conviction is protected by the rule that he may not again be placed in jeopardy of suffering the greater punishment not imposed at the first trial. Moreover, in its exaltation of form over substance and policy, the Court misconceives, I think, the essential principle of *Ball* itself:

" 'While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.' *United States* v. *Tateo* (1964), 377 US 436, 466 (84 S Ct 1587, 1589, 12 L Ed 2d 448, 451).

"To be sure, this societal interest is compromised to a degree if the second judge is forbidden to impose a greater punishment on retrial than was meted out at the first trial. For example, new facts may develop between the first and second trial which would, as an initial matter, be considered in aggravation of sentence. By the same token, however, the prosecutor who was able to prove only second-degree murder at the former trial might improve his case in the interim and acquire sufficient evidence to prove murder in the first degree. In either instance, if one views the second trial in a vacuum, the defendant has received less punishment than is his due. But in both cases, the compromise is designed to pro-

tect other societal interests, and it is, after *Green,* a compromise compelled by the Double Jeopardy Clause.

"I therefore conclude that, consistent with the Fifth Amendment, a defendant, who has once been convicted and sentenced to a particular punishment may not on retrial be placed again in jeopardy of receiving a greater punishment than was first imposed. Because the Double Jeopardy Clause has now been held applicable to the States, *Benton* v. *Maryland, supra,* I would affirm the judgment of the Court of Appeals in No. 418, and vacate and remand in No. 413, so that respondent Pearce may finish serving his first, valid sentence."

It is not necessary to premise this case, however, upon the double jeopardy provisions of the Fifth Amendment for that is at best only a minimum protection or bar. This Court said in *People* v. *Mulier, supra,* p 33, that a more cogent ground for decision would be on the basis of protecting the right of appeal which is granted by the Michigan Constitution. Chief Judge LESINSKI, speaking for the Court in *People* v. *Mulier, supra,* said at pp 32, 33:

"An enlightened concept of the protections which the law affords the accused at each step of the judicial process has caused the courts to re-examine the inherent fairness of the distinctions previously drawn to justify the imposition of harsher sentences under almost any set of circumstances."

I believe that the imposition of a greater sentence or the same sentence without credit for time served, upon retrial of a defendant who has vindicated his constitutional rights by exercising his right of appeal, unduly chills the right of appeal.

In *People* v. *Henderson* (1963), 60 Cal 2d 482, 492 (35 Cal Rptr 77, 86, 386 P2d 677, 686), the Court went on to hold that California's constitu-

tional provision against double jeopardy prevented the imposition of the death penalty upon defendant after reversal of a judgment sentencing him to life imprisonment.

"A defendant's right to an appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal."

See *People* v. *Ali* (1967), 66 Cal 2d 277 (57 Cal Rptr 348, 424 P2d 932), where the same court applied the *Henderson* rationale to a situation where defendant had been sentenced to concurrent terms at the original trial and to consecutive terms after a successful appeal and subsequent reconviction for the same offense.

In *State* v. *Wolf* (1966) 46 NJ 301 (216 A2d 586, 12 ALR3d 970), where the Supreme Court of New Jersey held that the prosecution was barred from seeking the death penalty at the new trial, the defendant received a life sentence on his conviction for murder in the first degree and the death sentence on retrial after an appeal. The Court reasoned that since the state granted a convicted murderer the unqualified right of appeal, standards of procedural fairness forbid limiting the right by requiring the defendant to barter with his life for the privilege of exercising it.

In *State* v. *Turner* (1967), 247 Or 301 (429 P2d 565, 570, 571), the Supreme Court of Oregon, following the lead taken in *State* v. *Wolf, supra,* and *People* v. *Henderson, supra,* promulgated the following procedural rule to be applied in all cases to assure the criminal defendant the unfettered exercise of his statutory right of appeal:

"After an appeal or post-conviction proceeding
has resulted in the ordering of a retrial for errors
other than an erroneous sentence, * * * and the
defendant has again been convicted, no harsher
sentence can be given than that originally imposed.
If the initial sentence was incarceration, the defend-
ant subsequently cannot be sentenced to any longer
term than the time still to be served upon his initial
sentence."

This is the rule which I would have this Court
adopt in this case. The majority here would force
a defendant whose constitutional rights had been
violated in a way which resulted in an invalid con-
viction to suffer this violation for the fear that on
retrial he would be given an even greater penalty. I
do not believe that such a price can be exacted for
invocation of a right. I would reverse and remand
for resentencing with the sentence imposed at the
first trial as a maximum and with credit for time
served.