PEOPLE *v.* PAYNE

Opinion of the Court

1. Criminal Law—Sentence—Resentencing—Harsher Sentence.
   Identifiable conduct of the defendant upon which a resentencing judge relies in imposing a harsher sentence, after the defendant has overturned his conviction on appeal and has been reconvicted, must have occurred *after* the first sentencing.

2. Criminal Law—Sentence—Resentencing—Harsher Sentence —Constitutional Law.
   Imposition of a harsher sentence upon reconviction following defendant's successful appeal was constitutionally impermissible because the record of the second sentencing did not disclose objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

Concurring Opinion

Williams, J.

See headnote 1.

Opinion Dissenting in Part

T. E. Brennan, J.

3. Criminal Law—Sentence—Defendant's Subsequent Conduct— Constitutional Law.
   *Courts are empowered to mete out sentences for the conduct of which the defendant stands convicted; that conduct and only that conduct, has been established factually in the manner required by constitutional due process and any other, subsequent, conduct with which the defendant has not been duly charged, and of which he had not been duly convicted accord-*

---

Reference for Points in Headnotes

[1–8] 21 Am Jur 2d, Criminal Law § 569 *et seq.*

*ing to the Constitution and laws of the state and the nation simply cannot be made the basis for depriving a person of his liberty (US Const, Am 13, § 1).*

4. CRIMINAL LAW — SENTENCE — INCREASED SENTENCE — VINDIC-TIVENESS.

*Sentence imposed after a new trial should be upheld where defendant previously had pled guilty before a different judge to the same charge and received a shorter sentence as the candid statement of the judge who imposed the last sentence, made on the record at the time of resentencing, was free of any taint of vindictiveness.*

OPINION FOR AFFIRMANCE
BLACK, J.

5. CRIMINAL LAW—SENTENCE—INCREASED SENTENCE.

*Defendant's sentence to 25 to 50 years' imprisonment on conviction of assault with intent to commit murder, when previously defendant had pled guilty before a different judge to the same charge and received a shorter sentence which was set aside and a new trial granted, was proper, where the trial judge heard details of the crime, was able to observe and judge the defendant and increased his sentence, not as a punitive measure against defendant for appealing, but because of the nature of the offense and the court's impression of the defendant, and where there is no claim by defendant that the trial judge was vindictive.*

6. CRIMINAL LAW—SENTENCE—INCREASED SENTENCE—APPEAL AND ERROR.

*Defendant's appeal was left bootless and improvident where his plea of guilty and sentence were set aside, a new trial was granted, he was subsequently convicted by a jury of the same crime and a greater sentence was then imposed, with credit allowed for time served and earned, because the sentencing statement on the second conviction and the affidavit filed by that trial judge with the Michigan Supreme Court showed: the judge had a greater opportunity to observe defendant than did the judge who imposed the first sentence, defendant deliberately committed the crime, he showed a depravity of mind, in the opinion of the trial judge defendant repeatedly lied under oath at the trial, and the increased sentence was not because defendant obtained a new trial.*

7. Criminal Law—Sentencing—Judges—Discretion.

*The Michigan Supreme Court has no honorable right to usurp the statutorily confided exclusive discretion of trial court judges in the sentencing of convicted felons.*

8. Criminal Law—Sentencing.

*A trial judge is not constitutionally precluded, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's life, health, habits, conduct, and mental and moral propensities.*

Separate Opinion
Adams, J.

See headnote 5.

Appeal from Court of Appeals, Division 3, Quinn, P. J., and Holbrook and T. M. Burns, JJ., affirming Berrien, Chester J. Byrns, J. Submitted November 23, 1970. (No. 33 October Term 1970, Docket No. 52,618–1/2). Resubmitted May 12, 1971. (No. 35 April Term 1971.) Decided November 9, 1971.

18 Mich App 42 reversed.

Leroy Payne was sentenced to 19 to 30 years' imprisonment on his plea of guilty to a charge of assault with intent to commit murder. Upon new trial, defendant was again convicted of the offense and sentenced to 25 to 50 years' imprisonment with credit for time already served. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Ronald J. Taylor,* Prosecuting Attorney, and *John A. Smietanka,* Assistant Prosecuting Attorney, for the people.

*Philip A. Brown,* for defendant.

T. M. KAVANAGH, C. J.  Defendant-appellant Leroy Payne was convicted in the Berrien County Circuit Court, by his guilty plea, of assault with intent to murder.[1]  On March 8, 1963, he was sentenced by the Honorable Philip A. Hadsell to a minimum of 19 years and a maximum of 40 years in prison. At the conclusion of a hearing subsequently ordered by the Court of Appeals, Payne's guilty plea and a prior confession were determined to have been involuntary and his conviction and sentence were vacated.  Motion for a change of venue was granted to Kent County.  Payne was reconvicted of assault with intent to murder by a jury in Kent County Circuit Court.  Upon remand to Berrien County, the Honorable Chester J. Byrns, Berrien County circuit judge, who had presided over Payne's Kent County trial, sentenced him to prison for a term of 25 to 50 years with credit for time served and "good time" earned.

The following excerpt from the transcript of appellant Payne's second sentencing is pertinent to his claim, hereinafter discussed, that the sentence imposed was excessive:

*"The Court:*    *  *  *  Mr. Payne, in presiding over your three day trial, I want to tell you that without any reservation, I agreed with the jury's verdict of guilty.  I heard your own testimony and I heard your cross-examination, and of course I had an ample opportunity of hearing about your crime which was one of extreme violence.  It was senseless; it was cruel, and frankly, I think it reflected a depravity of heart and but not for the grace of God, and the good physical condition of Victor Yost, he survived.  He was shot not once, not twice, but three times.  Mr. Yost has suffered and is still suffering from the near fatal wounds that you inflicted.

---

[1] MCLA § 750.83 (Stat Ann 1962 Rev § 28.278).  The crime is punishable by imprisonment for life or any number of years.

You were there when the doctor's testimony reflected that it took some three to four hours spent in surgery trying to save this man's life. Mr. Yost is a brave and able officer and is to be complimented for the excellent and fair manner in which he testified at your trial. And a police officer, whether he may be popular with someone or not is nevertheless a symbol of authority and whoever shoots a police officer in line of duty assaults not only the officer; not only the man, but he assaults all of society because law and order cannot exist unless our officers have the respect and the protection to which they are entitled to. These are precious rights of citizenship which you and I recognize and which would not exist if it were not for officers like Victor Yost who are willing not only to work, but even to die to preserve these rights.

"Assault with intent to murder, especially when a gun is used, is a most serious crime when the victim is a police officer in line of duty. I have felt since I have been judge that crimes of violence are the worst, and I have felt that the use of weapons shows a willfullness and a hatred of which we have too much of in our society today.

"When you appeal, and win a new trial, you wipe clean the previous conviction and sentence. You have then a presumption of innocence which I think the record will bear out and of which I maintain I protected throughout your trial and which your attorney was most zealous in insuring. This Court is no longer bound by the earlier sentence. I cite an authority, Mr. Reporter, *People* versus Poole, P-O-O-L-E, 7 Michigan, Appellate 291 [*sic*].

"*In your trial, you might have been acquitted and set free and you also risked a larger sentence with a different judge and this is a different judge between your sentence of five and one-half years ago and today; a judge who had a more detailed account of what you did during this new trial than the judge who sentenced you on a plea of guilty and did not*

*have the same opportunity to form impressions nor
did my distinguished colleague hear all of the details
as it came out in this particular trial.*

"*I am not setting a larger sentence than what I
will set in a few minutes because you appealed or
because of any added work or expense of a new trial.*
This I assure you, and every American citizen has
an absolute right to an appeal and to redress. As
citizens, they are entitled to use the protection and
rights that the law gives them and I would like to
think that no judge will be more careful than I to
insure this which we reward no man because he
pleads guilty and we punish no man because he
pleads innocent. *The larger sentence which I im-
pose here is based on the nature of the crime and
on the impressions which I formed of you and of
the crime for the three days of the trial and what
I honestly believe your crime showed of your char-
acter and attitude.* Now, I had considered a man-
datory life sentence because the maximum term of
imprisonment here could be any term of years up
to life imprisonment. The only reason that I am
not doing this is that I am looking into your past
history and I have given this searching thought
right up to the very last moment. You have a very
poor family background for which you are not to
blame, Mr. Payne. Your school reports were good
and you served approximately three years in the
Army and you earned an honorable discharge while
in service although I believe there was a court-
martial—wasn't there, Mr. Payne?

"*The Respondent:*[2] It was just a minor matter.
It wasn't what you would call a court-martial—

"*The Court:* Administrative—company punish-
ment?

"*The Respondent:* Yes, sir.

"*The Court:* But you did receive an honorable
discharge?

---

[2] Defendant is called respondent in the transcript. GCR 1963, 201.1
and 785.1, require that parties to an action be designated as plaintiff
or defendant.—REPORTER.

"*The Respondent:* Yes, sir.

"*The Court:* And by your own efforts, you completed high school and the employers you had all said that you were a good employee. *I have also checked at the prison where you have been and your conduct there is reported as good during the past four years and some odd months that you have been there and that you have been using the educational and rehabilitation facilities that are available.*

"These are the factors which I have considered on the good side of the ledger which have frankly saved you from a sentence of life imprisonment." (Transcript of sentence, pp 4–9.) (Emphasis added.)

The Court of Appeals affirmed (Quinn, P. J. and Holbrook, J.; T. M. Burns, J., dissenting). 18 Mich App 42. Appellant is here on leave granted. 383 Mich 760.

The questions of the propriety and constitutionality of imposing a harsher sentence after a defendant has overturned his conviction on appeal and been reconvicted have long divided American courts. Annotation, 12 ALR3d 978; Van Alstyne, *In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant,* 74 Yale L J 606 (1965); Comment, 28 Md L Rev 64 (1968). This Court recently considered the problem in *People* v. *Olary* (1969), 382 Mich 559. In upholding a harsher penalty upon reconviction, the *Olary* majority distinguished the case of *North Carolina* v. *Pearce*[3]

---

[3] The United States Supreme Court has not yet decided whether *Pearce* is to be applied retroactively. Although the Court twice granted certiorari to consider the question, in each case the writ was subsequently dismissed as improvidently granted. *Moon* v. *Maryland, cert granted* (1969), 395 US 975 (89 S Ct 2135, 23 L Ed 2d 764), *writ dismissed* (1970), 398 US 319 (90 S Ct 1730, 26 L Ed 2d 262); *Odom* v. *United States, cert granted* (1970), 399 US 904 (90 S Ct 2203, 26 L Ed 2d 559), *writ dismissed* (1970), 400 US 23 (91 S Ct 112, 27 L Ed 2d 122). We decline to predict the high Court's answer to the question of *Pearce's* retroactive or prospective ap-

[*Simpson* v. *Rice*] (1969), 395 US 711 (89 S Ct 2072, 23 L Ed 2d 656), hereinafter discussed, on the grounds that defendant Olary's

"original sentence was imposed by a justice of the peace, not required to be legally trained, and the second sentence was by a circuit judge, a duly licensed lawyer, after report to him, as provided by statute, by the probation officer as to defendant's background, record and attitude, to enable the circuit judge to fit the punishment to the offenders." (*Olary, supra,* at 567.)

Further distinguishing *Pearce, supra,* the Court noted that Mr. Olary's second conviction and resentencing were not occasioned by his having demonstrated to a superior tribunal that his original conviction was tainted with constitutional error but by his decision to assert his right to a trial *de novo* in the circuit court.[4]

Assuming *Pearce, supra,* was properly distinguished in *Olary, supra,* we do not think the present case is distinguishable because unlike *Olary* this case involves a felony conviction, a reversal by way of appeal because of constitutional error, and disparate sentences, imposed by judges of the same level and court, both of whom were provided with the statutory presentencing reports.[5]  We, therefore,

plication, but we will apply *Pearce* in the present case in order to instruct our trial courts as to the Michigan interpretation of an ambiguous portion of *Pearce,* discussed *infra,* pending clarification by the United States Supreme Court.

[4] It is noteworthy that *Olary, supra,* involved a misdemeanor. While all criminal defendants are entitled to due process of law, our Constitutions require stricter standards and procedures in many respects when the offense charged is serious and threatens the defendant with more severe punishment. See, *e.g., Duncan* v. *Louisiana* (1968), 391 US 145 (88 S Ct 1444, 20 L Ed 2d 491), *rehearing den* 392 US 947 (88 S Ct 2270, 20 L Ed 2d 1412). But see *Wood* v. *Ross* (CA4, 1970), 434 F2d 297, involving harsher sentence on appeal and *de novo* trial in circuit court, than that imposed in justice court.

[5] Nor is the present case distinguishable from *Pearce, supra,* because Mr. Payne's original conviction was by guilty plea, that is,

proceed to consider appellant Payne's contention that the imposition of a harsher sentence following his successful appeal, and reconviction was violative of the Fourteenth Amendment due process standards and procedures laid down in *North Carolina* v. *Pearce, supra.*[6]

---

because only the second sentencing judge had the opportunity to gain impressions of Mr. Payne and his crime throughout a trial. In *Pearce's* companion case, *Simpson* v. *Rice,* Mr. Simpson's original convictions were by guilty plea; he was subsequently reconvicted by a jury, whereupon he received a stiffer sentence. Whatever our own views are, we cannot ignore the fact that the United States Supreme Court did not find this difference between *Simpson* (one trial) and *Pearce* (two trials) worthy of distinguishing note. The holding of the Court as regards harsher sentence upon reconviction applied fully to both cases.

[6] My Brother BLACK asserts, infra, p 106, that *Pearce* is "doubtful faird" that is, lacking in precedential force, because Mr. Justice Stewart's opinion for the Court failed to gain the unreserved endorsement of at least five Justices. The following quotations from two of *Pearce's* concurring opinions demonstrate that the signers thereof declined to give Mr. Justice Stewart's opinion their unreserved endorsement primarily because they would go further to declare that the United States Constitution absolutely forbids the imposition of a harsher sentence upon reconviction:

"Although *I agree with the Court as to the reach of due process,* I would go further. It is my view that if for any reason a new trial is granted and there is a conviction a second time, the second penalty imposed cannot exceed the first penalty, if respect is had for the guarantee against double jeopardy." (Opinion of Mr. Justice Douglas, joined by Mr. Justice Marshall, at pp 726, 727. Emphasis added.)

"*Were these cases to be judged entirely within the traditional confines of the Due Process Clause of the Fourteenth Amendment, I should, but not without some difficulty, find myself in substantial agreement with the result reached by the Court.* However, the Court today, in *Benton* v. *Maryland* [(1969), 395 US 784 (89 S Ct 2056, 23 L Ed 2d 707)] * * * has held, over my dissent, that the Double Jeopardy Clause of the Fifth Amendment is made applicable to the States by the Fourteenth Amendment Due Process Clause. * * *

"Given *Benton,* it is my view that the decision of this Court in *Green* v. *United States,* 355 US 184 (1957) [78 S Ct 221, 2 L Ed 2d 199], from which I dissented at the time, points strongly to the conclusion, also reached by my Brother Douglas * * * that the Double Jeopardy Clause of the Fifth Amendment governs *both* issues presently decided by the Court. * * *

"I therefore conclude that, consistent with the Fifth Amendment, a defendant who has once been convicted and sentenced to a particular punishment may not on retrial be placed again in jeopardy of receiving a greater punishment than was first imposed." (Opinion of Mr. Justice Harlan, beginning at p 744. Emphasis partly in original, partly supplied by the present writer.)

In *Pearce* the United States Supreme Court held, *inter alia,* that neither the Equal Protection Clause of the Fourteenth Amendment nor the Double Jeopardy Clause of the Fifth Amendment imposes an absolute bar to a more severe sentence upon reconviction. But the Court further held that the Due Process Clause of the Fourteenth Amendment requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the second sentence he receives; and the defendant must be freed of the apprehension of such retaliatory motivation on the part of the sentencing judge. Resolution of the Federal constitutional question raised by appellant Payne requires interpretation and application of the following language from *Pearce, supra:*

"A trial judge is not constitutionally precluded * * * from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' *Williams* v. *New York* [1949], 337 US 241, 245 [69 S Ct 1079, 93 L Ed 1337]. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams*

---

Thus the holdings of six of the eight Justices who sat in *Pearce* firmly support the position we take in the present case. Since three of the Justices who declined to sign Mr. Justice Stewart's *Pearce* opinion think the United States Constitution absolutely forbids imposition of a harsher sentence upon reconviction, the present opinion can hardly be said to "outrun" the United States Supreme Court. See Justice BLACK's opinion, *infra,* p 111.

v. *New York, supra,* that a State may adopt the 'prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.' *Id.,* at 247.". (At p 723.)

\*   \*   \*

"In order to assure the absence of such a motivation [*i.e.,* vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (At p 726.)

The above language raises the following question: May the judge who imposes a harsher sentence upon reconviction rely on information not possessed by the first judge regarding defendant's conduct prior to the time of his first sentencing? If not, the sentence imposed by Judge Byrns was excessive because it appears his only knowledge of Payne's conduct *after* the first sentencing was that he had earned "good time" while in prison and had been taking advantage of prison educational and rehabilitation facilities. Judge Byrns stated, *supra,* that he based his decision to impose a stiffer sentence on impressions of Payne and his crime formed during the trial.

The question arises primarily because of ambiguous language in the following sentence from *Pearce, supra,* quoted earlier:

"Those reasons [for imposing a harsher penalty] must be based upon objective information concerning

identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." (At p 726.)

Does "occurring after   *   *   *   the original sentencing" refer to defendant's "identifiable conduct" or to acquisition of "objective information" regarding his conduct before or after original sentencing? Since *Pearce* was decided, lower courts have split over interpretation of the above language. Some opinions hold that only *conduct* of the defendant occurring after his original sentencing may be relied upon by the sentencing judge who imposes a harsher penalty. See, *e.g., Barnes* v. *United States* (1969), 136 App DC 171 (419 F2d 753) (dissenting opinion); *Torrance* v. *Henry* (EDNC, 1969), 304 F Supp 725; *Pinkard* v. *Neil* (MD Tenn, 1970), 311 F Supp 711; *Walsh* v. *Commonwealth* (1970), 358 Mass 193 (260 NE2d 911) (dictum at 916). Others hold or indicate that regardless of when the defendant's "identifiable conduct" occurred, if it first comes to a sentencing judge's attention after the time of the first sentencing it may be relied upon in support of a harsher penalty. See, *e.g., United States* v. *Kienlen* (CA 10, 1969), 415 F2d 557; *United States* v. *Gross* (CA 8, 1969), 416 F2d 1205; *United States* v. *Barash* (CA 2, 1970), 428 F2d 328.

The conflicting interpretations of the *Pearce* requirements were not resolved by the opinion of the United States Supreme Court accompanying its dismissal of a writ of certiorari in *Moon* v. *Maryland* (1970) 398 US 319 (90 S Ct 1730, 26 L Ed 2d 262). Certiorari had been granted to consider whether *Pearce, supra,* should be applied retroactively. In dismissing the writ as improvidently granted the Court said:

"As an appendix to its brief, the respondent has filed an affidavit of the judge who presided at the

second trial, setting out in detail the reasons he imposed the 20-year prison sentence. Those reasons clearly include 'objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.' " (At p 320.)

We have obtained a copy of the referenced trial judge's affidavit. Unfortunately, for our purposes, the Maryland judge who resentenced Mr. Moon considered conduct which occurred after the first sentencing. Therefore, *Moon* doesn't tell us whether *Pearce* allows a harsher sentence even though there is no (known) conduct of the defendant occurring after the first sentencing which would support a stiffer sentence.[7]

Pending clarification of *Pearce's* requirements by the United States Supreme Court, we are persuaded that those courts are correct which have interpreted *Pearce* to require that the "identifiable conduct" of the defendant upon which a resentencing judge relies in imposing a stiffer sentence must have occurred *after* the first sentencing.[8] That the *Pearce* Court intended this result is evidenced by Mr. Justice White's one sentence opinion advocating the opposite result:

---

[7] Similarly, the *per curiam* opinion accompanying dismissal of the writ of *Odom* v. *United States, supra,* does not answer our question. The opinion gives as the reason for dismissing the writ as improvidently granted that the order of the district court denying Mr. Odom's motion to set aside his second sentence "makes it clear that the greater severity of the second sentence was based on conduct on the part of the petitioner occurring after the time of the original sentencing proceeding, and that the new information was specifically referred to at resentencing." (*Odom, supra,* at p 112.)

[8] Justice BLACK'S assertion, *infra,* p 106, that no Justice dissented from Justice DETHMERS' contrary handling of *Pearce* in *Olary* is misleading for two reasons. First, the two *Olary* dissenters did not reach the *Pearce* issue. Second, since Justice DETHMERS first took great pains to distinguish *Pearce* in *Olary,* his subsequent interpretation of *Pearce's* requirements was clearly dicta and not controlling here.

"I join the Court's opinion except that in my view Part II–C [standards and procedures governing harsher sentence upon reconviction] should authorize an increased sentence on retrial based on any objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding." (*Pearce, supra,* at p 751.)

Furthermore, our interpretation is in accord with the grammar of the ambiguous *Pearce* language. "Information" does not "occur," it is obtained. "Conduct" "occurs."

We conclude, and hold, that the imposition of a harsher sentence upon reconviction following appellant Payne's successful appeal was constitutionally impermissible because the record of the second sentencing does not disclose "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." (*Pearce, supra,* at p 726.)

Our disposition of the above discussed issue renders unnecessary consideration of appellant Payne's contention that the possibility of a harsher sentence upon reconviction unduly chills the exercise of the right to appeal one's conviction granted by the Michigan Constitution of 1963, art 1, § 20.[9] We have carefully examined appellant Payne's other allegations of error and find them to be without merit.

Since this opinion was written, the case has been reheard and the records supplemented by additional statements by the trial judge. Nothing new, disposition-wise, has been added. The result remains the same.

---

[9] See Judge T. M. Burns' dissenting opinion below. 18 Mich App 42, 46.

The case is reversed and remanded to the Berrien County Circuit Court for resentencing in accordance with this opinion.

T. G. Kavanagh, Swainson, and Williams, JJ., concurred with T. M. Kavanagh, C. J.

Williams, J. (*concurring*). I concur with the Chief Justice's analysis of *Pearce* and the fact it is controlling. Personally, however, I think Justice White's opinion makes better sense.

T. E. Brennan, J. (*dissenting in part*). I agree with the Chief Justice's analysis of the *Pearce* decision.

I believe, however, that the United States Supreme Court was very, very wrong—dangerously, and illiberally wrong—in concluding that a harsher penalty could be imposed upon a defendant for " * * * conduct * * * occurring after * * * the original sentencing * * * ."

Courts are empowered to mete out sentences for the conduct of which the defendant stands convicted. That conduct, and only that conduct, has been established factually in the manner required by constitutional due process.

Any other, subsequent, conduct with which the defendant has not been duly charged, and of which he had not been duly convicted according to the Constitution and laws of the state and the nation simply *cannot* be made the basis for depriving a person of his liberty.

The Thirteenth Amendment makes the point perfectly and abundantly clear.

"Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist

within the United States, or any place subject to their jurisdiction." US Const, Am 13, § 1.

To the extent that the *Pearce* case stands for the proposition that a harsher sentence, imposed on retrial as a punishment for, or a deterrent to, the exercise of the right of appeal, it is good, sound constitutional law.

To the extent that *Pearce* ignores the plain command of the Thirteenth Amendment, it is a horrible mistake, and one which every state and Federal judge, endowed with the gift of conscience ought to call forcibly to the attention of our constitutional superiors on the United States Supreme Court.

As to this case of *Payne,* I am satisfied that the candid statement of the circuit judge, made on the record at the time of resentencing is free of any taint of vindictiveness, and that the sentence should be upheld.

BLACK, J. (*for affirmance*). Mr. Payne's appeal, granted January 21, 1970 (383 Mich 760), was assigned to then Associate Justice T. M. KAVANAGH and duly submitted last year. December 16, 1970 the assignee Justice submitted to this then manned Court of six an opinion calling for reversal and resentencing in accordance with its tenor. That opinion, since withdrawn, will *not* appear in our reports.

In effort to attain a prompt decision, by the Court before whom the appeal had been submitted, the writer dropped other work and drafted an opinion standing for affirmance. That opinion was delivered to the other Justices December 22, 1970. It *will* appear in our reports, *infra* beginning at p 106. It communicates adequately my then and present view of Circuit Judge Byrns' eminently

permissible and perfectly constitutional action when, upon full-fledged trial of Mr. Payne before a jury of another county than the county of indictment (ordered upon Mr. Payne's motion for venue change), Mr. Payne was convicted again of assault with intent to murder and sentenced (August 30, 1967) to 25 to 50 years imprisonment with credit allowed for time served and "earned"; distinguished from his original sentence by Judge Hadsell, in 1963, to 19 to 20 years imprisonment.

There is more to report. December 30, 1970 Justice T. M. KAVANAGH "held" decision of the appeal, thus automatically eliminating Justice DETHMERS from participation, the latter's term then being due for end in less than 48 hours. Next came a memorandum from newly elected Chief Justice KAVANAGH dated January 22. With it he submitted to us a substituted opinion, likewise standing for reversal for resentencing. The memorandum concluded:

"Since we are apparently split 3-to-2 on this case, we should consider resubmission to the entire present Bench in hopes of obtaining a sounder precedent. I would anticipate little inconvenience to the litigants in the event of resubmission, since the case was originally submitted on briefs."

The next internal event was that of submission by the present writer, to the other Justices, of a memorandum dated March 1. It reads:

"What is introduced below repeats the resolution offered orally on December 30. This one is in writing, for reference in a forthcoming supplemental opinion. Counting procedurally on *Moon* v. *Maryland* [398 US 319; 26 L Ed 2d 262] and *Odom* v. *United States* [— US —; 27 L Ed 2d 122] I wish to have the Court resolve:

"That we request through the clerk submission by Judge Byrns of an affidavit supplying, 'in detail' as Judge Pugh did in *Moon* v. *Maryland* (June 8, 1970), his reasons for imposition of the August 30, 1967 sentence of Mr. Payne, so that this Court may determine whether, within Justice Stewart's allegedly 'ambiguous' opinion of *North Carolina* v. *Pearce,* 395 US 711, 23 L Ed 2d 656, 'there was a retaliatory motivation on the part of the sentencing judge.'

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The new members of the Court will note that *Pearce* was decided June 23, 1969, nearly two years *after* Mr. Payne was sentenced the second time, and that USSC has twice since, over objection of Justice Douglas, refused to say that *Pearce* is retroactive in effect."

That resolution came to adoption by the Court March 2. On the same date the Court ordered— *sua sponte*—a rehearing of Mr. Payne's appeal. The order for rehearing concluded with provision that "the cause [be] submitted forthwith, without additional briefs or argument."

Pursuant to direction and on April 19 our clerk wrote Judge Byrns as follows:

"The Court has asked me to refer you to *North Carolina* v. *Pearce,* decided June 23, 1969 (23 L Ed 2d 656); *Moon* v. *Maryland,* decided June 8, 1970 (26 L Ed 2d 262) and *Odom* v. *United States,* decided November 9, 1970 (27 L Ed 2d 122), and to the fact that you presided at Mr. Payne's Kent county trial in August of 1967 and were the second sentencing judge.

"The question in this Court for review on rehearing ordered March 2 is whether considering Mr. Payne's sentence by Judge Hadsell in 1962 and the somewhat greater sentence imposed by you August 30, 1967 following the Kent county trial, the second sentence was 'harsh' within the rule of *Pearce.* You

will perceive how and why this question has arisen upon examination of *Pearce, Moon* and *Odom*.

"Your reasons given (prior to handing down of the 3 cited cases) for the sentence imposed August 30, 1967, appear in the transcript of sentence filed in your court on September 8, 1967. The Court wishes now that you prepare and submit an affidavit, procedurally as was submitted to the Supreme Court by Judge Pugh in the *Moon Case,* in order that the Court may determine whether there was or was not the vindictiveness to which the Supreme Court addressed itself in *Pearce.*

"In order that you may ascertain precisely how this was handled in *Moon* you are furnished herewith a copy of Judge Pugh's affidavit, sworn to by him October 1, 1969."

May 10 Judge Byrns responded by letter to the clerk, enclosing an affidavit attested by him. The affidavit is much the same as that which the United States Supreme Court accepted and acted upon, after grant of certiorari for review of *Moon* v. *Maryland* (1970) 398 US 319 (90 S Ct 1730, 26 L Ed 2d 262). It reads:

"In accordance with the direction of the Supreme Court of Michigan in the above cause, I, Chester J. Byrns, being first duly sworn, say that:

"1. I am and have been since January 1, 1967, one of the judges of the Second Judicial Cicuit of Michigan (Berrien County).

"2. Leroy Payne, defendant-appellant in the above cause, pled guilty on December 14, 1962, before the Honorable Philip A. Hadsell, Circuit Judge, now retired, to the crime of assault with intent to murder, and was sentenced to 19-20 years.

"3. On June 15, 1967, I suppressed a confession of Mr. Payne, set aside his guilty plea and granted him a new trial based on his claim that improper means were used by the police to secure his confession which he claimed was involuntary.

"4. On August 4, 1967, I granted Mr. Payne's motion for a change of venue and transferred and heard the jury trial in Grand Rapids (Kent County), Michigan, which resulted in a verdict of guilty of assault with intent to commit murder.

"5. During said trial I had the opportunity, which Judge Hadsell did not, to observe defendant for three days and, far more important, to hear many more of the details of the crime and Mr. Payne's participation in it than Judge Hadsell who, as the arraignment transcript shows, had only inquired of defendant whether the defendant committed the assault against Officer Yost with a gun with intent to kill and murder, to which Mr. Payne answered only 'yes.'

"6. Unlike Judge Hadsell who had Mr. Payne before him for only a few minutes at the time of plea and again at sentence, I had the opportunity to observe and hear Mr. Payne who took the witness stand and who was examined and cross-examined extensively. Mr. Payne's story and claim in trial of not being at all involved in the crime was in direct conflict with what he told Judge Hadsell both at arraignment and at the plea of guilty where he not only admitted his crime but expresed sorrow and regret for it and showed thereby a remorse for his crime. At time of sentence Judge Hadsell said he believed Mr. Payne's claim of regret. At the time of sentencing by me on August 30, 1967, when given the opportunity to state anything he wished me to consider, Mr. Payne replied, 'Nothing.'

"7. At the jury trial before me Mr. Payne repeatedly denied under oath not only shooting Officer Victor Yost, but claimed under oath he was home with his wife and had while waiting earlier at church for his children at Sunday School gotten the gun used in the Yost shooting as security for a $3.00-loan to an unknown stranger and this gun and Payne's car were allegedly stolen the night of the

shooting. This court believes this was a tissue of lies and so did the jury.

"8. Frankly, I was then and am now of the opinion that Mr. Payne repeatedly lied under oath at the trial before me. While a sentencing judge receiving a guilty plea and an expression of regret from a defendant might find remorse and a resolution to rehabilitate from such a defendant, which might limit the sentence, I could not so find this in Mr. Payne. I was charged with the judgment of determining how long an individual should be confined, which in turn depends on my judgment of his character and his real desire for rehabilitation according to the facts and impression I receive.

"9. At the trial of People v Lionel Bradford (Berrien circuit No. X–768, Michigan Supreme Court No. 51072), a codefendant with Payne, who was found guilty by jury of assault with intent to murder Charles Plummer (who was shot along with Officer Yost but who was out of the country at the trial of Mr. Payne) Plummer testified (Bradford trial transcript pp 49, 50, and 180) that while he (Plummer) was wounded and lying on the ground, Mr. Payne came back and stood by the left fender of the car and deliberately fired right at him.

"10. Payne testified at Bradford's trial (February 4, 1963) that Lionel Bradford and Payne were driving a 1955 blue and white 2-door Pontiac on November 5, 1962 in the early morning hours. After having broken into a restaurant in South Bend, Indiana, and a clothing store near Benton Harbor, Michigan, Payne testified that he and Bradford were stopped by a police vehicle on M–139. Bradford had told Payne he 'would not be taken.' As they stopped, Bradford and Payne jumped from their vehicle and began firing at the two officers, hitting both of them.

"Payne remembered going back to one of the officers but couldn't recall exactly what then happened. Both men subsequently jumped into their car and fled, Payne giving his gun to Bradford in a ravine

and returning home where he (Bradford transcript pp 45–60) was subsequently arrested.

"On September 2, 1965, nearly three years after his sentence by Judge Hadsell and about two years before I granted him a new trial, Leroy Payne signed an affidavit supporting an appeal of Bradford claiming he gave 'false testimony' at the Bradford trial. He said that the only reason he testified at that trial was due to fear of the police, that Bradford never admitted committing crimes, and that Bradford had denied being present when the officers were shot. Further, Payne swore in his affidavit he had hardly known Bradford prior to being arrested, and that he had not been with Bradford on either the date of the shooting or the day before.

"11. At the Payne trial before me, in far greater detail than would have been present in a plea of guilty, it was established before me beyond a reasonable doubt that Mr. Payne had participated in the deliberate, cold-blooded attack upon and wounding three times of Officer Yost under conditions that Mr. Yost could not properly defend himself, which I felt then and do now showed a depravity of mind.

"12. I had the details of the nature of the wounds and the medical fight to save Officer Yost's life from Mr. Yost and from his surgeon, Dr. Robert Reagan, as well as the residual and continuing damage to Mr. Yost, which Judge Hadsell on a plea of guilty would not have had.

"13. I had as a result of the trial and many facts brought out therein the conclusion that only by divine providence and not because of Mr. Payne was the life of Officer Yost saved.

"14. As stated at the time of sentencing, my increase in sentence to 25–50 years was not because the defendant asked for and got a new trial (which I granted) or a change of venue (which I granted), but because of the conditions and facts stated by me to Mr. Payne at the time of sentencing as well

as the above matters which I do not believe were all known to Judge Hadsell.

"15. Further deponent says not."

[Subscribed, sworn, etc.]

The next event of the appellate series was delivery to the other Justices, by the Chief Justice, of his third opinion for reversal. That was done under date of September 21. Presuming at this writing that this third review is due to be the opinion of the Court, I respond with the foregoing plus the ensuing presents this 14th day of October.

Between appropriate separating lines my 1970 opinion for affirmance, mentioned at the outset, is inserted here.

. . . . . . . . . . . . . .

BLACK, J. Defendant Payne demands on appeal that we compare his 1962 sentence upon plea of guilty in Berrien County, with his second sentence upon conviction by a jury in Kent County after change of venue, and that we find by the doubtful faird of 4-2-1-1 *North Carolina* v. *Pearce* (1969), 395 US 711 (89 S Ct 2072, 23 L Ed 2d 656) that the second sentence was unconstitutionally more "harsh" than the first.[1]

In corresponding vein we considered *Pearce* in *People* v. *Olary* (October 6, 1969), 382 Mich 559, 565–568, wherein no member of the Court dissented from Justice DETHMERS' handling for us of the issue posed

---

[1] By plea of guilt to the charge of assault with intent to murder, and later by jury verdict, Mr. Payne's crime consisted of the cold-blooded shooting of police officer Yost as the latter approached Payne's automobile; the officer in a scout car having previously signaled the Payne car to a stop. Not one of Payne's three shots missed. One bullet crippled Yost's gun arm; hence he was unable to draw his gun and get into action. Payne and his companion drove away but were apprehended later. Yost was critically wounded and subjected to major surgery to save him. He managed to survive and testify years later.

by *Pearce.* In *Olary* our rather unenthusiastic view of *Pearce* was summed up (p 566):

"Then the rather amazing requirement seems to be express that, if a greater sentence is imposed after the second conviction, the sentencing judge must cause to be placed in the record his reasons for so doing, based on conduct of the defendant occurring after the first sentencing or, at least, on subsequent information coming to the judge after the first sentence."

Proceeding from *Olary* to today's question: I am unable to find that a majority of the Court, seated for determination of *Pearce,* committed the Court (if indeed there was *any* commitment beyond affirmance) to anything constituting a dependable precedent except that which, in full paragraphic context, was written by Mr. Justice Stewart (p 726):

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

Justice T. M. KAVANAGH, writing to reverse for resentencing, has plucked from the middle of *Pearce's* foregoing paragraph the second sentence thereof. Then, upon allegation and judgment that the sentence is grammatically "ambiguous", our Brother finds that the defendant's "identifiable conduct" must be "bad," and recorded that way, in order to satisfy

the constitutional requirements of *Pearce's* quoted paragraph.

Now I cannot object legally to following the decisions of our superior, the United States Supreme Court, whatever we may think of such of its decisions as may dictate the criminal processes of the states. But I do of right protest the gratuitous insertion, in a short-of-majority opinion released by the Supreme Court, of an additional qualifying word or words which the endorsers of that opinion chose not to wedge in. And when that is attemptedly done by a subordinate Court bent on a this way or that way "interpretation" of an opinion of the Supreme Court, I not only object but except. Let us interpret and apply *all* of Justice Stewart's words as they are, not as we might wish he had written them.

I shall presently return to this "identifiable (bad) conduct" view of Justice Stewart's opinion. For the merits of the constitutional question, however, the opinion of Division 3 (18 Mich App 42) expresses best the view I take of Judge Byrns' assiduous care of Mr. Payne's right as claimed by him under *Pearce,* and of the Judge's fulfillment of judicial duty in such regard. The following is adopted (pp 45, 46):

"A trial affords more opportunity to hear all details, to observe and judge a defendant than does a summary plea proceeding, a fact noted by Judge Byrns. The trial judge noted the right of every citizen to seek appellate relief and the fact that obtaining such relief should in no way affect a subsequent sentence. The trial judge then stated that the sentence he was about to impose was not because defendant had appealed but by reason of the nature of the crime and impressions formed of defendant during 3 days of trial. The trial judge noted that the statute under which defendant was convicted authorized a life sentence or any term of years, and

except for defendant's past history (poor family background, good school, service and prison records), a life sentence would have been imposed."[2]

Judge Byrns' "reasons", for the sentence ordered after the jury trial (25 to 50 years with allowed credit for time served and earned "good time"), compared with the sentence meted out years before on Mr. Payne's plea of guilt (19 to 40 years), need no expatiation. Read in continuant context, the Judge's discourse portrays something more than due care in effort to conform with the rule of *Williams v. New York* (1949), 337 US 241, 245 (69 S Ct 1079, 93 L Ed 1337) which, later, was expounded in *Pearce* at 723–726.

From that conclusion I turn to the three Federal *appellate* decisions (not District Court opinions or conceded dicta) which Justice T. M. KAVANAGH admits are opposed to the application he, per the above, would make of the quoted "ambiguous" sentence. The three are *United States* v. *Kienlen* (CA 10, 1969), 415 F2d 557; *United States* v. *Gross* (CA8, 1969), 416 F2d 1205 and *United States* v. *Barash* (CA2, 1970), 428 F2d 328.

Pick up the first, *Kienlen*. The unanimous opinion there provides plain reason why the 11 Federal circuits are thus far loath to speed ahead of *Pearce*. Read first the sentencing judge's reasons for stepping up Kienlen's sentence (pp 559, 560) from 12 years to 18 years, in array with those which Judge Byrns declared upon sentence of Mr. Payne. Doing so, note the striking emphasis upon judicial consideration of *information gained by and upon actual trial* of the facts, compared with that which in each

---

[2] The complete text of that which is necessary to determine whether Judge Byrns did or did not supply the record, required by Justice Stewart's opinion as quoted, appears in Justice T. M. KAVANAGH'S opinion, *ante* at pp 87 *et seq.*

instance was provided by the earlier plea. Finally, consider Chief Judge Murrah's conclusion of *Kienlen*—for the Court (p 560):

"After a brief colloquy, he [the sentencing judge] further noted, 'I want it clearly understood that what I have said with respect to increasing the sentence or, rather, imposing a more severe sentence than I had before, is not to be taken by anyone as punishment for the exercise of constitutional rights by this defendant.'

"In our judgment, this meets the Pearce standard. Naturally, the statement that the trial judge was not penalizing the defendant for exercising his constitutional right to appeal is not conclusive. But it is indicative of the sentencing climate. The decision was clear and rational. Finding this sentence altogether compatible with Pearce, we need not consider the possible retroactivity of Pearce. See Moon v. Maryland, cert. granted 395 U.S. 975, 89 S. Ct. 2135, 23 L. Ed. 2d 764 (1969) on the issue of Pearce's retroactivity."

The foregoing brings to the fore that which the courts of the States must ever bear in mind; that since there is no compulsion, they of right and good sense should never undertake to gallop ahead of the United States Supreme Court, as legal skirmishers, into the uncertain and dangerous brambles of Federal criminal justice. Subordinates never know whether that top Court of a state or of the Nation will provide support later; a fact learned anew when our opinion of *People* v. *Charlie Lee Woods* (cited *post*), was held up from February 14 to August 4, 1969, awaiting *Jenkins* v. *Delaware* (1969), 395 US 213 (89 S Ct 1677, 23 L Ed 2d 253).

Here our constitutional position, *vis-a-vis* a decision of the United States Supreme Court we are warned to follow, should not be forgotten as all

view the occasional error of proceeding ahead of our
superior as Federal questions arise, say as chron-
icled anent California in the separate opinion of
*People* v. *Taylor* (1970), 383 Mich 338, 367–372.
"Made in Washington", as cynics currently describe
the products of Congress, applies as truly but more
respectfully to the decisions of the United States
Supreme Court. We need not buy them nor employ
them, unless they bear that warranty of fitness which
under Article 6 is made negotiable by the unreserved
endorsements of five or more of the Justices. *Pearce*
is not so endorsed.

Ranking surely with Chief Justice Marshall's
mighty phrase, admonishing that "We must never
forget, that it is a *constitution* we are expounding."
(*McCulloch* v. *Maryland* [1819], 17 US at 407 [4
L Ed 579]), Justice Adams has written for us an
equally enduring deterrent warning. Appearing in
*In Re Apportionment of Legislature* (1964), 372
Mich 418, 473, it is that he did not "conceive it to
be the proper duty or function of this Court to
attempt to outrun the Supreme Court of the United
States." Having admired crescently the penetrating
omniscience of my Brother's thought in such regard,
due respect has since been paid thereto. See *Muske-
gon Prosecuting Attorney, ex rel. Schaub,* v. *Klev-
ering* (1966), 377 Mich 666, 672; *People* v. *Mallory*
(1967), 378 Mich 538, 584,[3] and *People* v. *Charlie Lee
Woods* (1969), 382 Mich 128, 129. On the last cited
occasion the *entire* Court, Justices T. M. Kavanagh
and Adams included, joined in the deserving acco-
lade.

The issue arising from Mr. Payne's 1967 sentence
may be summarized best by calling attention to the

---

[3] My footnote in *Mallory* concluded:
"It is better, say I, that a subordinate court risk direct reversal
than risk indictment and conviction for having predicted by a sooth-
sayer's judgment what ultimately does not come to pass".

Supreme Court's most recent duel over these alleg-
edly "harsh" second sentences to imprisonment.
That duel appears in 5-1-1-1 *Moon* v. *Maryland*
(June 8, 1970), 398 US 319 (90 S Ct 1730, 26 L Ed
2d 262) where the writ theretofore granted *Moon*
was dismissed "as improvidently granted". Five
members of the Court declared that "the dispositive
development is that counsel for the petitioner has
now made clear that there is no claim in this case
that the due process standard of *Pearce* was vio-
lated." That conclusion was reached upon strength
of Moon-counsel's statement renouncing any claim
"that Judge Pugh was vindictive".

If such is to be the "dispositive development" of
cases as at present bar, then let it be noted that
nowhere in the brief of Mr. Payne does there appear
the slightest suggestion or hint that Judge Byrns
was "vindictive"; also that this case was received
on briefs with oral argument waived. Again, is it
not in order that this Court of a state should not
attempt to manufacture more rights from the Bill of
Rights, and that it should attend in that regard the
leadership of the United States Supreme Court?

No other question posed for review requires dis-
cussion. I vote to affirm.

                    *       *       *

On rehearing there is no more that needs saying
than this:

*First:* The Supreme Court, having granted Mr.
Moon's petition for certiorari, accepted and acted
affirmatively upon sentencing Judge Pugh's October
1, 1969 affidavit. That affidavit, a copy of which I
have attached as an appendix so that concerned out-
state as well as instate counsel may compare it con-
veniently both with Judge Byrns' sentencing state-
ment (*ante* at p 87) and Court-requested affidavit,

persuaded the Supreme Court that Judge Pugh therein had set forth "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding", and that the writ of certiorari granted Mr. Moon therefore should be dismissed as improvident (*Moon* at 320, 321).

*Second:* In *Odom* v. *United States* (November 9, 1970), 400 US 23 (91 S Ct 112, 27 L Ed 2d 122), the Supreme Court determined to employ sentencing Judge McRae's order of July 1, 1970, the order having made "it clear that the greater severity of the second sentence was based on conduct on the part of the petitioner occurring after the time of the original sentencing proceeding, and that the new information was specifically referred to at resentencing." (*Odom* at 23). Again, the writ was dismissed as improvidently granted.

My question is: Why is this professedly USSC-devoted Court of a state unwilling to accept sentencing Judge Byrns' even more convincing statement at sentence (*ante* at p 87), and his equally convincing affidavit (which last the Court itself requested), as equally or more persuasive that something quite aside from "retaliatory motivation" led to Payne's somewhat more severe sentence of August 30, 1967?

Is it not true that here, as pointed out by the writer in his 1970 opinion (*ante* at p 106), that there is not "the slightest suggestion or hint" in the brief of Mr. Payne "that Judge Byrns was 'vindictive' "? Clear it is that Michigan trial court judges are in for "vindictive" discipline if they do not go easy on vicious professionals like Leroy Payne and Lionel Bradford. Both deliberately stopped to shoot at the officers, one of whom was grievously wounded,

wholly helpless, and prone on the pavement. And all these facts could not possibly have been known to sentencing Judge Byrns until Bradford and Payne had been separately tried. (For appellate review of Bradford's conviction, see *People* v. *Bradford* [1968], 10 Mich App 696; leave to appeal denied September 30, 1968; 381 Mich 778.)

*To conclude:*

The projected issue of retroactivity of *Pearce* is no more present now, in this case of *Payne,* than it was in *Moon* and *Odom* when each was decided. Without thought of attempted usurpation of the Supreme Court's exclusive prerogative, I suggest that we may accept provisionally the ultra-liberal hope that the quoted portion (*ante* at p 93) of *Pearce* will some day be held retroactive, and yet properly find under *Moon* and *Odom* that Judge Byrns' sentencing statement and subsequent affidavit, like that of Judge Pugh in *Moon,* has left Mr. Payne's appeal both bootless and improvident. I conclude as the Supreme Court did in *Odom:*

"Since it is now apparent that this case does not present the issue of the retroactivity of *North Carolina* v. *Pearce, supra,* the writ is dismissed as improvidently granted."

Believing that this Court has no honorable right to usurp the statutorily confided exclusive discretion of trial court judges in the sentencing of convicted felons, I adhere to the first premise of *Pearce's* immediate father (*Williams* v. *New York* [1949], 337 US 241, 245 [69 S Ct 1079, 93 L Ed 1337]), distilled as it was by *North Carolina* v. *Pearce* at 723:

"A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the

light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' "

As before, I vote to affirm.

# APPENDIX

(Copy of Judge Pugh's affidavit, mentioned by the Supreme Court in *Moon* v. *Maryland* [June 8, 1970], 398 US 319 [90 S Ct 1730, 26 L Ed 2d 262, 264].)

## 47

## RESPONDENT'S EXHIBIT "A"

In The Circuit Court for Montgomery County, Md.

### Nos. 7639 and 7640

### State of Maryland
### vs.
### Dennis Mullene Moon

At the request of the Attorney General of Maryland, made to me on the 30th day of September, 1969, I do hereby make the following statement:

On June 6th and 7th, 1966, I presided over the jury trial of Dennis Mullene Moon who was convicted under two indictments, (No. 7639 and No. 7640) with the crimes of assault with intent to kill and murder (No. 7639 Criminals) and robbery with a deadly weapon and grand larceny (No. 7640 Criminals).

At the request of the defendant's attorney, sentence
was imposed after the return of the verdict, no re-
quest for a presentence investigation was made be-
cause such was not desired by defendant's attorney.
At the sentencing I was informed that another Judge
of this Court had sentenced the defendant to twelve
years in the penal institution after his conviction of
the crime of robbery with a deadly weapon. There
was no trial under Criminals No. 7639 charging as-
sault with intent to kill and murder, at the first trial.
I was also aware of the fact that the defendant was
given a retrial as a result of the decision of the
Maryland Court of Appeals in the case of *Schow-
gurow* vs. *State,* 240 Md. 121. I sentenced the de-
fendant for his conviction of robbery with a deadly
weapon, under Count One of the Indictment in Crim-
inals No. 7640 to a period of twenty years, and for
a period of ten years under Count Number Six of
this indictment the ten year sentence to be suspended
on condition that when the defendant is released
from his sentence under the First Count that he will
remain on good behavior and not get in any trouble
any more. I sentenced the defendant to ten years
under Count No. One in Criminals No. 7639, charg-
ing assault with intent to kill and murder, this latter
sentence to be suspended on condition that he remain
on good behavior when he is released from his sen-
tence under the First Count in Criminal No. 7640.
Credit was also given for the time previously served
by the defendant awaiting retrial from June 2, 1964,
to June 7, 1966, (2 years and 5 days). At the time
of sentencing, I took into consideration the follow-
ing facts:

1. The defendant bludgeoned the victim with a
pipe rendering her unconscious for a long period of
time, causing her to be hospitalized for four days.
She had a complete loss of memory of the events

of the crime. The attending physician testified that she had head and eye injuries, that she was rather confused, disoriented, suffering from headaches, that she had deep lacerations over her left eyebrow with marked hemorrhage around the eye, contusions behind the right ear, abrasions of the left knee, a concussion, cerebral concussion, that she was under a doctor's care until July 6, 1964, a period of forty-nine days that she was still suffering from the affects of her injuries on the date of trial when she broke down in tears on the witness stand.

2. The defendant stole the sum of $400.00 from the victim, whom he knew, by means of his attempt to kill her, to prevent his identification by her.

3. The defendant was tried and convicted of another offense at his trial, the crime of assault with intent to kill and murder, which sentence of ten years I suspended on condition that he remain on good behavior when he is released under the sentence of twenty years.

4. The defendant had previous convictions of housebreaking and larceny for which he was sentenced to one year in Ft. Leavenworth, Kansas, in 1959, a conviction under the Dyer Act in Carson City, Nevada, in 1961 for which he was sentenced to three years; a conviction on April 13, 1961, under Title 18, Sec. 2312 in Las Vegas, Nevada, for which he was given three (3) years.

5. The defendant took the stand and under oath denied that he had struck the defendant. When his lawyer called to the defendant's attention that he took the stand in the previous trial and admitted hitting the victim, the defendant said he did not remember testifying that he hit the victim at the first trial, which I did not believe, and I was convinced that he had perjured himself at this sentencing, which I considered as identifiable misconduct

on his part occurring after the time of the original sentence.

6. That on June 8, 1966, I refused to sign an order to have the defendant transferred from the Mary-land Penitentiary to the Patuxent Institution for his evaluation as to whether or not he was a defective delinquent under Article 31B, Section 5 of the Code of Laws of Maryland stating that "The defendant has been sentenced to twenty years in the Penitentiary plus two ten year sentences which were suspended and the Court is of the opinion that the sentence of twenty years plus the two ten year suspended sentences is adequate and therefore no proceedings should be filed under the defective delinquency statute."

7. I had not read the transcript of the first trial and did not preside at the first trial, therefore did not know what facts and circumstances the first Trial Judge took into consideration in sentencing the defendant to twelve years.

Respectfully submitted,
James H. Pugh,
Judge of the Circuit Court
for Montgomery County,
Maryland

Subscribed and sworn to before me this 1st day of October, A.D., 1969.

Betty Ruth Belcher,
Notary Public, Maryland

(Seal)

Adams, J. (*for affirmance*). I concur with that portion of Justice Black's opinion which he designates as his 1970 opinion.